## CASPER v HIGGINS

Ohio Appeals, 1st Dist, Butler Co

Decided May 27, 1935

C. W. Elliott, Middletown, and B. F. Harwitz, Middletowr for plaintiff in error.

Harry S. Wonnell, Hamilton, and Wilbur E. Benoy, Columbus, for defendant in error.

## OPINION

By ROSS, PJ.

At the outset, the evidence is conclusive that the last allegation of the reply is not supported. In **Bloom v Leech, Admr., 120 Oh St, 239**, the Supreme Court has at considerable length and with great care reviewed the several circumstances incident to the operation of motor vehicles by those having a joint interest in the general ob-

jectives involving the use of the vehicle. A reading of the record convinces us that while the plaintiff was jointly interested in the general objectives of the trip, he had absolutely no control over the operation of the vehicle, an essential requirement mentioned by the Supreme Court in Bloom v Leach, Admr., supra, to constitute him a member in a "joint enterprise" in the legal acceptation of the term.

Not being engaged then in a joint enterprise, and not being a passenger for hire, the plaintiff manifestly must fall into the category of a guest. The fact that the plaintiff contributed a few dollars to a fund out of which the defendant professor received a portion of his compensation is too remote a consideration to form the basis for a claim that the plaintiff compensated his instructor for driving him to and from Oxford, Ohio. The defendant was paid by the university, not by the plaintiff. The natural inference from the facts is that the instructor was glad to be of service to the plaintiff student in extending his experience in debate and that he did this gratuitously, although the defendant was in turn compensated for his time and expense by the university. There is no evidence that he was compensated for the wear and tear upon the automobile, which was his personal property, except indirectly through the receipt of his salary as a professor. There is nothing, however, to indicate that as an instructor he was required to make trips of the nature herein involved and in fact the evidence shows that he was making the trip partially at least to transact private business of his own during the trip. Under these circumstances, we are bound to consider the plaintiff a guest passenger to whom under the Illinois statute the defendant owed no duty except that by wanton and wilful misconduct he would not contribute to the injury of the p'a'ntiff. The appropriate statute applicab'e to a guest, was passed by the Legislature of Illinois, was properly proved. This act is as follows:

"The 57th General Assembly, at the Regular Biennial Session, which was begun and held at the Capitol, in the city of Springfield, on the 7th day of January, A. D., 1931, and adjourned sine die on the 30th day of June, 1931, passed an Act House Bill No. 967, to amend §42 of an Act entitled "An Act in relation to motor vehicles and to repeal a certain Act therein named, approved June 30, 1919 as amended," which Act was approved by the governor of the state of Illinois, July 2, 1931 and reads as follows:

"Section 1. Section 42 of 'An Act in relation to motor vehicles and to repeal a certain Act therein named,' approved June 30, 1919, as amended, is amended to read as follows:

"Section 42 (a) Nothing in this Act shall be construed to curtail or abridge the right of any person to prosecute a civil action for damages by reason of injuries to person or property resulting from the negligent use of the highways by the driver or operator of a motor vehicle or motor bicycle or its owner or his employee or agent, and in any action brought to recover any damages for injury either to person or property caused by running any motor vehicle or motor bicycle at a rate of speed greater than is reasonable and proper having regard for the traffic and the use of the way, or so as to endanger the life or limb or injure the property of any person, the plaintiff or plaintiffs shall be deemed to have made out a prima facie case by showing the fact of such injury and that the person or persons driving such motor vehicle or motor bicycle was at the time of such injury running the same at a speed greater than was reasonable and proper having regard for the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person.

"(b) Provided, however, that no person riding in a motor vehicle as a guest, without payment for such ride, nor his perosnal representative in the event of death of such guest, shall have a cause of action of such motor vehicle or its owner or his employee or agent for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought.

"Nothing contained in paragraph (b) of this section shall be construed to relieve a motor vehicle carrier of passenger for hire of responsibility for injury or death sustained by any passenger for hire."

"Q. When did that act become effective?
"A. July 2, 1931.
"Q. Has that Act since been repealed?
"A. It has not."

The law of Illinois—the lex loci delicti controls. 32 Ohio Jur., p. 212. Hover, Admr. v Pennsylvania Co., etc., 25 Oh St, 667.

"If the acts of the parties impose no obligation on the one hand and confer no rights upon the other where they occur, no good reason is apparent why they should spring into active existence the moment the parties pass into another jurisdiction where, if they had occurred therein, such relative rights and obligations would have resulted. An act should be judged by the law of the jurisdiction where it is committed; the party acting or omitting to act must be presumed to have been guided by the law in force at the time and place, and to which he owed obedience; if his conduct according to that law violated no right of another, no cause of action arose." **Alexander v Pennsylvania Co., 48 Oh St, 623.**

See also: **32 Ohio Jur., p. 236, §27,** citing among other authorities, **DeShetler v Kordt, 43 Oh Ap, 236 (11 Abs 689).**

The court erroneously withdrew this defense from the consideration of the jury, and refused to specially charge thereon. The court should have instructed a verdict for the defendant. Certainly the verdict for the defendant was fully justified.

Our conclusion of this phase of the case might properly conclude the action of the court upon the petition in error, but as there are further reasons why the judgment was correct, we feel it proper to at least state these.

The jury found that the collision of the cars occurred to the south of the center of the road, that is upon the side of the road upon which the defendant was lawfully permitted to drive. They so found specifically in answer to a special interrogatory.

"No. 1. Do you find that the collision between the automobiles of Black and Higgins occurred while the automobile of Higgins was south of the center line of the concrete pavement of said highway? Answer: Yes."

"(a) Do you find that the defendant was negligent? Answer: No."

The evidence amply sustains the opinion of the jury upon this aspect of the case. The driver of the automobile with which that driven by the defendant collided states that the collision occurred on the north or wrong side of the road for the defendant. He is obviously mistaken. The evidence shows that the defendant at some distance west of the point of collision, as his automobile rounded a curve, lost control of the vehicle due to the fact that the road was wet and the car was proceeding rapidly around the curve. The automobile of the defendant "skidded" wildly for some considerable distance. It, however, was brought back into a straight course before it reached a point some distance west of the vehicle driven by Black. Even some of the plaintiff's witnesses testify to this fact. Black, observing the wild swerving of the defendant's automobile, became alarmed and drove his vehicle off of the paved portion of the road to the north and away from the center of the road upon his right side thereof. The front and rear right wheels were some two feet off the paved portion of the highway. He maintained this position, although moving slowly, until he became assured that there was no further danger from the automobile of the defendant, it having been caused to resume a straight course on its side of the center of the road as it came toward him. He thus while still moving at a very moderate rate of speed attempted to regain the paved road. The right front wheel of his automobile was held by the north ridge of the pavement which was some inches higher than the mud berm. The pavement was wet and slippery and the mud berm was even more so. The rear wheels finally took hold sufficiently to propel the vehicle upon the pavement at an angle, the momentum in the vehicle taking it to and past the center of the road to the south, just as the defendant's automobile reached that point. The collision took place and both vehicles were severely damaged by the impact. Both automobiles went into the ditch along the south side of the road.

Even if the defendant was chargeable with negligence in permitting his automobile to become unmanageable through skidding, that negligence had ceased before the defendant's vehicle reached a point near Black, and this is indicated by the fact that Black deemed it safe to regain his proper position upon the pavement, after being thoroughly frightened. The fact that Black was alarmed and placed his automobile in a position of safety partially off the pavement does not change the obvious fact that the direct sole proximate cause of the collision was his improper manipulation of his automobile in getting back on the highway. Even the mud marks upon the pavement show the path of his automobile across the north side of the road past the center to the south. It being apparent to him that he was experiencing difficulty in bringing the right wheels of his vehicle back upon the pavement, that it was necessary to cut the front wheels sharply to the south upon the edge of the north side of the pavement, that the road was wet and slippery, that

his right front and rear tires would necessarily be covered with mud from the muddy berm, and that considerable power must be given the motor to effect replacing his automobile upon the pavement, the jury was justified in concluding that he failed to use the care which a reasonably prudent person would use under similar circumstances in either not waiting until the automobile of the defendant had passed, or in not using sufficient caution in the application of power in his vehicle.

In this connection, it is proper here to refer to an erroneous special charge given by the court at the request of the defendant. The charge is as follows:

"The court instructs you that the mere skidding of an automobile is not an occurrence of such uncommon or unusual character which, unexplained, furnishes evidence of negligence on the part of the driver."

The skidding was not unexplained. It was easily explained when the combination of a wet road, a curve in the road, and a sufficient speed are considered. If upon a perfectly calm day, upon a dry street, a vehicle moving at a moderate rate of speed, and apparently mechanically perfect, should suddenly skid across the road some ground might be found for considering such action of the vehicle as being unexplained. The presence of the conditions prevailing in the instant case forbade the court from using such a term. Its use was incorrect, misleading and erroneous. A similar charge was so held in the case of Central Greyhound Lines, Inc. v State Automobile Mutual Ins. Co., 17 Abs, 419. However, in view of the fact that the jury was fully justified by the evidence in finding that the collision occurred upon the south side of the road and also in answer to another interrogatory that the defendant was not negligent, the giving of the special charge could have had no influence upon their verdict. The skidding had ceased before it could become effective as a contributing cause of the collision. It should not therefore have been considered by the jury as such a possible cause. We find that the giving of the charge, while erroneous, was not prejudicial to the plaintiff.

The giving of special charge No. 5, at the request of the defendant is also criticized:

"If you find that the negligence of the driver of the Buick automobile, Sidney J. Black, was the sole cause of the collision and the injuries of which the plaintiff complains, then I say to you that your verdict should and must be in favor of the defendant even though the defendant may have been negligent as charged in the amended petition."

It is claimed that this charge assumes the negligence of Black. This no more assumes the negligence of Black than does a special charge requested by the plaintiff and given by the court:

"If you find from the evidence that the collision which resulted in plaintiff's injuries was proximately caused by negligence on the parts of both the defendant and Mr. Black, you will return a verdict in favor of the plaintiff."

Both charges would be less liable to criticism if the negligence of the parties involved was directly predicated upon the interrogatories participle instead of inferentially, as appears in both charges. We do not approve either of these charges, for the reason that both are subject to the criticism mentioned, but for the reasons previously given, we find that defendant's charge No. 5 did not constitute error, prejudicial to the plaintiff.

As to the other assignments of error, we find nothing prejudicial to the plaintiff in view of the record and what has hereinbefore been stated. Thus concluding, we find that the judgmnet should be affirmed.

MATTHEWS and HAMILTON, JJ, concur.