# TENNYSON, Appellant v. KERN, Respondent

## (74 N.W. 2d 316)

(File No. 9515. Opinion filed January 10, 1955)

**George A. Bangs, W. A. McCullen, Joseph M. Butler,** Rapid City, for Plaintiff and Appellant.

**Whiting, Lynn & Freiberg,** Rapid City, for Defendant and Appellant.

SMITH, J. Plaintiff's complaint alleges that while the infant plaintiff was a passenger for compensation in an auto-

mobile driven by defendant, Fred Kern, the defendant operated such motor vehicle in a negligent manner so as to drive the same off the highway and cause same to upset and that as a result thereof plaintiff suffered described serious and permanent injuries. The answer admits the accident; denies that defendant was negligent or that plaintiff was a passenger for compensation. As a separate defense defendant alleges that if there existed a contract whereby defendant was transporting plaintiff for compensation at the time of the accident, the infant defendant disaffirms the same. The trial resulted in a directed verdict for defendant and plaintiff has appealed.

Stated in the light most favorable to plaintiff, these are the controlling facts. Arrangements had been made for holding the junior-senior banquet of the Quinn, South Dakota, high school at the Alex Johnson Hotel in Rapid City on April 25, 1953. For some two months four junior boys, Larry Tennyson, Fred Kern, Jerry Kjerstad and Delmar Paulson had been making their plans to attend. The plan was that they would go in Tennyson's car and all would share the expenses. However, shortly before April 25th Tennyson's car was placed in a garage for repairs, and on the 24th it was apparent it might not be available. Thereupon the request was made that Fred Kern take his car. He said that if he did they would have to share the expense because he couldn't afford to take his car. The others agreed that if he would take his car, they would share the expenses.

Although the boys attended Quinn high school only Paulson and plaintiff Tennyson lived in Quinn. Kjerstad lived north of Quinn, and defendant Kern lived just out of Cottonwood approximately thirteen miles to the east of Quinn. Rapid City is about sixty miles west of Quinn. These cities are located along U. S. Highway 14—16, extending east and west through South Dakota.

On the morning of April 25th Kern drove to Tennyson's home in Quinn. He had become uncertain as to whether he would go, and was not dressed to go. Shortly Kjerstad arrived. He was ready to go. The boys drove to the garage to ascertain the condition of Tennyson's car, and discovered it was not available. After some urging Kern agreed to go.

The boys drove to the Kern home out of Cottonwood. While Kern was bathing his brother had the car serviced at a gas station in Cottonwood. The suit which Kern intended to wear at the banquet was at a cleaners in Philip some distance east of Cottonwood. So when Kern was ready he drove east from Cottonwood, on U. S. Highway 14-16, intending to go to Philip. His plan was to return west over that highway to Quinn where they would pick up Paulson, and also to allow Tennyson to stop at his home and complete his preparation for departure for Rapid City. However, on the way east to Philip the car was precipitatad through a guard-rail and into a deep ditch, and both Tennyson and Kjerstad were very seriously injured. Plaintiff's injuries resulted from the failure of defendant Kern to exercise ordinary care in the control of his car. Kern was seventeen years old at the time in question.

We shall separately state and discuss the three propositions argued by the parties.

Whether plaintiff Tennyson was a guest without compensation or a passenger for reward is the first question we are asked to decide. The controlling statute reads:

> "No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such willful and wanton misconduct contributed to the injury, death, or loss for which the action is brought; and no person so transported shall have such cause of action if he has willfully or by want of ordinary care brought the injury upon himself." SDC 44.0362.

It is conceded that neither willful nor wanton conduct on the part of the defendant Kern, nor contributory negligence, on the part of Tennyson, are involved.

■ According to our decisions the provisions of this statute do not restrict the rights of the one who is transported in a motor vehicle for a benefit to the owner or opera-

tor so real, tangible, and substantial as to serve not only as the inducing cause of the transportation, but to completely overshadow any consideration of mere hospitality growing out of friendship or relationship. Gunderson v. Sopiwnik, 75 S.D. 402, 66 N.W.2d 510; Scotvold v. Scotvold, 68 S.D. 53, 298 N.W. 266; Forsling v. Mickelson, 66 S.D. 366, 283 N.W. 169; and Schiltz v. Picton, 66 S.D. 301, 282 N.W. 519. We have also held that no change of meaning was intended by substitution of the term "compensation" for the word "payment" by the 1939 revision. Gunderson v. Sopiwnik, supra. In McMahon v. De Kraay, 70 S.D. 180, 16 N.W.2d 308, 311, in treating of the guest statute of Arkansas which employs the word "payment", based upon a review of the decisions of other courts, we said.

> "Reason, and these authorities, have induced the conclusion that notwithstanding the fact that a trip may have a social complexion, if the owner of the vehicle insists upon a prearrangement by which his passenger friend is obligated to share the expense, the provision thus made is for such a payment for the transportation as will defeat the relationship of host and guest under the Arkansas statute."

We now hold that in described circumstances a person so transported is not a guest without compensation within the contemplation of SDC 44.0362, supra. Cf. Annotation 10 A.L.R.2d 1351.

The evidence is in conflict. In our opinion it would support a finding by the jury that Kern insisted upon such a prearrangement as did obligate his friends to share the expense of the trip to Rapid City, and therefore the conclusion that they were not to be guests without compensation within the meaning of the quoted guest statute.

The second proposition the parties argue, under the assumption a jury had found Kern had insisted on such an obligation on the part of his friends as removed them from the reach of the guest statute, is whether the evidence is sufficient to support a finding by a jury that the trip to Philip in the opposite direction from Rapid City to retrieve Kern's suit was comprehended by that agreement.

The inquiry is not whether, when it came time to

perform their agreement, the passengers would have voluntarily included the expense of the preparatory trip to Philip; it is whether they had obligated themselves so to do.

■ If there was an agreement to share the expense of the Philip trip it must have been manifested by conduct. Cf. Williston, Contracts, Rev.Ed., § 22A. According to the testimony of the parties there was no express agreement dealing with that expense. Their original informal contract comprehended nothing but the expense of the planned trip to Rapid City and into the Black Hills. The Philip trip was not then contemplated. If all had gone as planned Kern would have completed his preparations and have left Cottonwood that morning for Quinn to pick up the other three and proceed west to Rapid City. However, he had changed his mind during the night and he drove to Quinn to acquaint his friends of that fact. When he changed his mind again, it became necessary for him to go back east to ready himself for the banquet and to get his suit. Plaintiff and Kjerstad accompanied him on that trip. The fourth party to their original agreement was not there and had no part in what followed. Kjerstad was asked if he rode to Philip for the ride with his friends, and made answer, "He asked us to go along. He didn't want to go himself. He had to get his suit." This statement of fact remains undisputed in the record. Further, it is apparent that they were not ready to go to Rapid City as they left Cottonwood for Philip. They had to return to Quinn to permit plaintiff to complete his preparations and to pick up the fourth boy.

We find it completely impossible to discern a rational basis in these facts upon which to erect an inference that the parties assented to a new obligation to. add the trip to Philip to their original agreement, or to recognize the whole as one undertaking. The described back tracking was caused by and was solely for the benefit of Kern. Plaintiff and Kjerstad merely accompanied him as he completed his preparations to go on the trip they had arranged.

■ At the trial the court first received and then struck from the evidence testimony of plaintiff to the general effect that it was his understanding it was all one trip, and also an admission, made on cross-examination before trial, of de-

fendant Kern that he believed it would have counted as one trip. Respondent objects to the consideration of this evidence because it was stricken and the court's ruling is not assigned or argued as erroneous. However, we do not labor that point. Testimony of Kjerstad to the same effect remains in the record. If it be assumed that all of this testimony is properly before us, we deem it insufficient to support an inference that the original agreement embraced the whole as one trip. We entertain the opinion that before the separate understanding of these parties as to the scope of their agreement can gain probative force, it must be made to appear that it has a rational basis. The facts out of which their agreement arose are all before us, and as we have indicated, we find it wholly insufficient to support an inference that the parties either by words or conduct assented to an agreement to share the expense of the Philip trip.

■ It is our holding, therefore, that plaintiff and Kjerstad were being transported as guests without compensation when plaintiff was injured. It follows that the court did not err in directing a verdict for defendant.

Although the third proposition argued by the parties is predicated upon an assumption we have just rejected, viz., that the evidence is sufficient to warrant a finding that the Philip trip was within the scope of a general contract to share the expense of the excursion to Rapid City and the Black Hills, we deal with it because we are of the view that it leads to a further conclusion supporting the ruling of the trial court.

The question for consideration is whether, because of the disaffirmance of the assumed contract of the infant, it is against the policy of the law to permit the enforcement of the alleged tort liability for plaintiff's injuries.

■ The discussion in Cooley on Torts, 4th Ed., p. 199, § 66, points up the principle involved. It is there stated:

"There are some cases, however, in which an infant cannot be held liable as for tort, though on the same state of facts a person of full age and legal capacity might be. The distinction is this: If the wrong grows out of contract relations, and the real injury consists in the nonperformance of a contract

into which the party wronged has entered with an infant, the law will not permit the former to enforce the contract indirectly by counting on the infant's neglect to perform it, or omission of duty under it as a tort. The reason is obvious: To permit this to be done would deprive the infant of that shield of protection which, in matters of contract, the law has wisely placed before him."

The only case which has come to our attention in which this policy has been enforced in similar circumstances is that of Brown v. Wood, 293 Mich. 148, 291 N.W. 255, 257, 127 A.L.R, 1436. An instructive annotation follows the report of that case in 127 A.L.R. at page 1441.

In the cited case, the infant defendant, who drove his car to school, received 15 cents per day from each of the plaintiffs for their transportation. We select passages from the court's opinion. It pointed out:

"In the instant case a contract to which all parties were minors is disclosed. Were it not for the fact that the contract was voidable because of defendant's minority there would have been imposed upon him the obligation to carry the minor plaintiff's safely. This, by his negligence which resulted in the automobile collision, the defendant failed to do."

It then quoted the contention made by plaintiffs, which in substance, is so earnestly duplicated in our case, as follows:

" 'We are not asking this court to enforce a voidable contract. We are simply asking that defendant be held liable for the breach of his tort duty to use ordinary care in transporting the plaintiffs. Nor, are the plaintiffs trying to enforce any implied condition to the contract of carriage, i. e., a condition to carry in safety. It is the tort liability that plaintiffs are attempting to enforce. * * * His tort under this set of facts is distinct, separate and apart from his contract, and enforcement of his tort in no way impairs the immunity given him against liability on his contracts.' "

The conclusion of the court follows in these words:

"Notwithstanding plaintiffs' quoted assertion, the fact remains that the status of 'a passenger for hire' is one arising out of contract relations; and in

these tort actions the damages sought arise in consequence of defendant's breach of this contract to carry safely, and to permit recovery is to indirectly enforce the contract obligation of the defendant minor. Under the facts of these cases we cannot assent to plaintiffs' contention as to defendant's liability for the alleged tort."

The circumstances which were deemed controlling in that case, in our opinion, are not distinguishable from those appearing in this record.

Viewed in its most serious aspect, the conduct of the defendant involves only a failure to exercise ordinary care. Therefore, to succeed in fixing liability upon defendant for his resulting injuries plaintiff sought to place himself beyond the reach of the guest statute quoted supra. Under different circumstances the one transported might establish the inapplicability of the guest statute by proof of a noncontractual benefit to the owner or driver of the automobile which served as the inducing cause of the transportation. Forsling v. Mickelson, 66 S.D. 366, 283 N.W. 169. But this is not such a case.

The theory of plaintiff is that he is not subject to the restrictions of the guest statute because the benefit which was to come to Kern through the sharing of the expense of the trip. However, the parties are close friends; the mission upon which they were embarking was wholly and completely social in character; and an ordinary sharing of expenses among them would have taken on that complexion and would have been offered and received as an incident of the occasion. Cf. McMahon v. De Kraay, 70 S.D. 180, 16 N.W. 2d 308. In our opinion, in these circumstances nothing short of a contract which obligated these friends to contribute would have sufficed to establish the fact that their transportation was for compensation.

Such is the theory of plaintiff's case. He alleged he "was a **passenger** for compensation". Through this contract with his friends, Kern became a private "carrier of persons for reward". SDC 8.02 An implied term of his contract was to carry safely. His negligence constituted a breach of that obligation. As the Michigan court so clearly

said in Brown v. Wood, supra, "In these tort actions the damages sought arise in consequence of defendant's breach of this contract to carry safely, and to permit recovery is to indirectly enforce the contract obligation of the defendant minor."

As the annotation points out, cf. 127 A.L.R. at 1442, "The practical test, therefore, would seem to be not whether the tort arose out of or was connected with the infant's contract, but whether the infant can be held liable for such tort without in effect enforcing his liability on his contract." Application of this practical test here results in the conclusion that the defendant cannot be held, under this accepted policy of the law.

Under the view most favorable to plaintiff, and perhaps most reasonable as well, he having entered the Kern automobile as a passenger and never having consented to ride as a guest subject to the restrictions of the guest statute, he retained his status as passenger notwithstanding the disaffirmance by plaintiff. However, as we have held, he cannot recover as a passenger, because all that has been established as a foundation for recovery from the infant in tort, constitutes a breach of his disaffirmed contract. Brunhoelzl v. Brandes, 90 N.J.L. 31, 100 A. 163. That liability in tort cannot be enforced without, in effect, enforcing the voidable contract.

It follows, we are of the opinion that the trial court did not err in directing a verdict for defendant and, therefore, the judgment is affirmed.

All the judges concur.