KLEINHESSELINK, Respondent v. PORTERFIELD et al., Appellants.

(83 N.W.2d 191)

(File No. 9260. Opinion filed May 16, 1957)

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Defendant and Appellant.

**Morgan & Fuller,** Mitchell, for Plaintiff and Respondent.

SMITH, P.J. This is an action for damages for personal injuries received when an automobile, in which plaintiff was an occupant and the above named Edward Kleinhesselink was the driver, collided with a tractor trailer, of which Jack Porterfield was the driver and S. A. Porterfield the owner. Trial before a court and jury resulted in a very substantial verdict and judgment for plaintiff against the Temporary Administrator of the Estate of Edward Kleinhesselink, and in separate verdicts and judgments absolving the Porterfields from liability for plaintiff's injuries. The case is here on appeal by the defendant, The Temporary Administrator of the Estate of Edward Kleinhesselink. Under objections to testimony, motions for directed verdict and judgment n. o. v. and assignments of error predicated thereon, appellant presents two principal propositions. First: Did the trial court err in admitting the testimony of Ted Heemstra wherein he repeated an utterance of Edward Kleinhesselink? and, second: The evidence is insufficient to support a finding by the jury that plaintiff was other than a guest without compensation for his transportation.

Edward Kleinhesselink and Arthur Kleinhesselink, father and son, lived on neighboring farms near Alton, Iowa. The father had been engaged in farming and cattle-feeding operations for many years. His son, Arthur, worked with him as long as he was home. Some nineteen years prior to the time in question the son married, purchased some land from his father, and since has been independently en-

gaged in like operations. In addition to working his own farm, the son leased a portion of the home farm from his father. They exchanged work in the operation of the two places. In November 1954 the father was trying to buy some heavy cattle to put on feed for the market. Some two weeks before the day of the collision the father had a talk with the witness, Ted Heemstra, an old friend and former neighbor, about a proposed trip to a sale barn at Kimball, South Dakota, where livestock auction sales are regularly held. The proposed trip was postponed until the plaintiff son could go along. On November 22, 1954 the father and son had a conversation after which they left for the Sioux City Stock Yards where they looked at six or seven bunches of cattle but made no purchases, and returned to their homes. That afternoon the father returned to the son's farm and a further conversation was had between them. The trial court sustained objections to the proof of these conversations between the father and son. The following morning the father picked the son up at his farm; then drove to Orange City where Heemstra entered the car; and the three traveled on to Kimball, South Dakota, arriving there about one o'clock. They went directly to the sale barn where they looked at cattle and attended the afternoon sale. The son and father sat side by side during the sale and they talked about the cattle as they went through. Although the father bid on several bunches of cattle, no cattle were purchased during the afternoon. They had supper at Kimball and returned to the sale ring. During the night sale the son began to bid on calves as they were offered in singles and pairs, and succeeded in picking up 22 head weighing 450 to 500 pounds. The son testified that he had not intended to buy any cattle when he started for Kimball. The end result, however, was that the father made no purchases, and the son bought the described calves. They left Kimball at about 12:30 A.M. with the father driving. The collision occurred thirty miles to the east at a point where the road turns to the south. Both father and son were severely injured; the father passed away as a result of his injuries about two weeks later.

Although the complaint charged the father with willful

and wanton misconduct, the court refused to submit the case on that theory. However, following our holding in Antonen v. Swanson, 74 S.D. 1, 48 N.W.2d 161, 28 A.L.R.2d 1, it did submit the case on the theory that the evidence would support a finding by the jury that the negligence of the father was a proximate cause of the collision and the son was a passenger for the benefit of his father under our holdings dealing with the guest statute, SDC 44.0362. As we have indicated the jury returned a verdict for plaintiff. Thus we come to a discussion of the propositions urged by the appellant. That discussion must be placed against a background of statutory and declared law.

Our guest statute reads:

"No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such willful and wanton misconduct contributed to the injury, death, or loss for which the action is brought; * * *" SDC 44.0362.

In Schlitz v. Picton, 66 S.D. 301, 282 N.W. 519, at page 520, it was written, "While it might be that under this statute actual payment in money or other tangible thing is not necessary to exclude one from its terms and render one not a guest, nevertheless, we believe that the statute contemplates some benefit accruing from the transportation to the owner or operator of the motor vehicle in order to render a passenger in a motor vehicle not a guest. Such benefits as are compatible with hospitality, companionship or good fellowship accruing to the owner or operator are not sufficient to take the passenger out of the guest classification."

In Scotvold v. Scotvold, 68 S. D. 53, 298 N.W. 266, at page 271, in dealing with the nature of the benefit one must bestow to become a passenger rather than a guest, we stated, it must be "sufficiently real, tangible and substantial to serve as the inducing cause of the transportation, and to

operate to completely overshadow any considerations of mere hospitality growing out of friendship or relationship."

Such is the settled construction of the cited statute. Gunderson v. Sopiwnik, 75 S.D. 402, 66 N.W.2d 510.

In substance the utterance of the father which Heemstra was permitted to repeat to the jury was, "Let's wait until Art (the son) can go" and "He said he wanted Art to help him look at some cattle." The objection and motion to strike were upon the ground that the testimony was incompetent, immaterial and irrelevant to the issues, and purely hearsay.

■ The position that the challenged testimony of the witness Heemstra was inadmissible under the hearsay rule is without sound basis. It would, we believe, have been ruled admissible as against the objection by accepted authority under the common law. The cause of action arose as against the father, and survived his death under SDC Supp. 33.0414-1. The plaintiff was seeking to enforce that liability against one with whom the father is in every respect completely identified. The utterance of the father which the court admitted constituted an admission of the father unfavorable to the theory for which the administrator was contending in this action. Hence, it was relevant and material and should not have been excluded as hearsay. 31 C.J.S. Evidence §§ 270 and 272, pp. 1022, 1023; III Wigmore, Evidence, 3d Ed., § 1048; Morgan, Admissions as an Exception to the Hearsay Rule, 30 Yale L.J. 355; McCormick, Evidence § 239.

■ However, no matter how the objection should have been ruled according to common law, no question remains as to the proper ruling under our law since the promulgation of SDC 36.0104. In accordance with the enlightened trend pointed out in V Wigmore, Evidence § 1576, that section was adopted to provide relaxation of the hearsay rule in the furtherance of justice. The section reads as follows:

"In actions, suits, or proceedings by or against the representatives of deceased persons including proceedings for the probate of wills, any statement of the deceased whether oral or written shall not be excluded as hearsay, provided that the trial judge shall first find as a fact that the statement was made

by decedent, and that it was in good faith and on decedent's personal knowledge."

By its express terms, this provision rules the Heemstra testimony admissible.

■ Faint objection is made for the first time in this court because the trial court did not "first find as a fact that the statement was made by decedent, and that it was in good faith and on decedent's personal knowledge" before permitting this testimony to go to the jury. Where it so clearly appears from the record of that which the trial court did in denying a motion to strike evidence and in ruling on other motions it must have satisfied itself of the questioned matters, we ought not to disturb its ruling predicated upon so belated an objection.

■ The second proposition argued by defendant deals with the legal sufficiency of the evidence. It is contended that defendant's motion for a directed verdict at the close of the evidence should have been granted because the evidence was legally insufficient in two particulars. We propose to separately state and consider these two specifications of insufficiency. In so doing, under settled principles, we accept the testimony of plaintiff and his witnesses as true, and view the evidence in the light most favorable to plaintiff. Hansen v. Isaak, 70 S.D. 529, 19 N.W.2d 521.

The first specification is that there is no showing of an understanding between the father and son that the son would go to Kimball to assist the father in judging cattle, or even a showing that the father asked the son to go for that purpose. In the evidenced circumstances, we think these specified particulars of insufficiency are without legal significance.

■ It was the father who was in the market for cattle. When Heemstra suggested they go to Kimball, as he and the father had done in previous years, the father seemed to know that his son was not free to leave his farm at that time, and he stated he wanted to wait until Art could go; he wanted him to help him look at cattle. Two weeks after this talk with Heemstra, the father appeared at his son's farm early on the morning of November 22nd. After some

conversation the son joined the father and they drove to the Sioux City Yards, where they looked at several bunches of cattle, but made no purchases. The son was returned home at about eleven o'clock in the forenoon. Late the same afternoon the father drove to the son's home and a further conversation was had. The following morning, the day of the collision, the father returned to the son's farm; the son entered his car; and they started for Kimball. The indicated conversations between these two before they journeyed to Sioux City and Kimball were ruled to be inadmissible by the trial court under the terms of an Iowa statute. However, because of the history of their association in farming and cattle raising, their location on neghboring farms, and their exchange of work, the inference arises that this father and son were intimately acquainted with each other's operations. The son testified that when he started for Kimball, he was not intending to buy any cattle. We think it is reasonable to infer that on November 22nd and 23rd the son knew, on the one hand, that the father was intent upon buying heavy cattle, and on the other, the father knew the son was not then of a mind to add to his herd. Because the primary purpose of these trips was to supply the father's feed yard with cattle, and because of his conduct, the inference is impelled that he was the instigator of both trips. He waited a period of two weeks until the son could go. He had said he wanted to wait until Art could go because he wanted him to help him look at cattle. That he should value and desire the assistance of this experienced, mature son he had trained, and with whom he had worked throughout the long years is not difficult to understand. Of course, he could not so value the son's judgment without Arthur's being conscious of the fact. So whether or not the father put his request in express words, which is highly probable, we think it squares with common sense and logic to infer that Arthur knew his father wanted his assistance, and that he accompanied him on those days for that reason. The transportation having been motivated by a desire on the part of the father for the benefit of the son's judgment in selecting and buying cattle, and the son having entered the car for that purpose, proof that they

entered into a contract with reference thereto was not essential to a conclusion that the guest statue was inapplicable. Tennyson v. Kern, 76 S.D. 136, 74 N.W.2d 316, at page 321; and Forsling v. Mickelson, 66 S.D. 366, 283 N.W. 169.

■ The defendant has phrased his second specification of insufficiency in words as follows, "Even if plaintiff went along to help his father, his motivating reason for making the trip was the relationship and the comradeship." This contention is predicated on the language we have quoted supra from Scotvold v. Scotvold. The argument is that the benefit the son was to bestow on the father was not sufficiently real and tangible to overshadow the relationship and comradeship between the parties.

We discern no basis in the evidence warranting such an inference. Although it be accepted that this father and son were close and affectionate companions, enjoyed working together and like other men in the industry, gained pleasure out of attendance at such sales as the Kimball sale ring conducts, we think the circumstances revealed without dispute by this record are completely inconsistent with the hypothesis that such considerations served as the primary motive of either the father or son in undertaking this journey to Kimball. Primarily, this was a business trip. Not only that, but the business in hand was of substantial importance to the father. He needed a number of heavy cattle in his feeding operation. Because the acquisition of these animals was of real importance to the father, it undoubtedly was so viewed by the son. They went alone in search of such cattle at the Sioux City Yard. They took Heemstra along "for the ride", as he said, when they went to Kimball. Reason impels the conclusion that such sociability as added to the pleasure of their mission was but incidental to its primary purpose. We deem the suggested inference to be without substantial foundation.

■ As we have been considering this evidence we have neither been unaware that it is circumstantial in character nor have we been unmindful of the long standing rule of this jurisdiction which requires facts and circumstances which are not only consistent with a theory, but which are inconsistent with any other rational theory before it can be said that

theory is established by circumstantial evidence. Erickson v. Todd, 62 S.D. 280, 252 N.W. 879. The evidence at hand is without any substantial dispute, and, in our opinion, all of the inferences in the chain of inferences we have been considering withstand that test, and establish the ultimate finding of the jury which renders the guest statute inapplicable.

■ Having said that the evidence was without substantial dispute, we should add a word. We think it is legally unimportant, in view of all of the other circumstances, that the son purchased 22 head of calves at Kimball. In our opinion, the transportation of the son was characterized by the motives and circumstances in which it orginated and did not take on a different character because it subsequently turned out that the son gained an unforeseen and unexpected advantage therefrom.

■ Finally the defendant suggests that plaintiff was guilty of contributory negligence and hence cannot recover. A review of the evidence has convinced us that the argument that plaintiff was guilty of contributory negligence as a matter of law is without basis, and that the contention does not merit discussion.

The judgment and order of the trial court are affirmed.

All the Judges concur.