MITZEL, Appellant v. HAUCK, Respondent

(105 N.W.2d 378)

(File No. 9840. Opinion filed October 13, 1960)

**H. I. King, George J. Rice,** Aberdeen, for Plaintiff-Appellant.

**Agor, Bantz, Siegel & Barnett,** Aberdeen. for Defendant-Respondent.

BIEGELMEIER, J. This is an action for personal injuries suffered by plaintiff riding in a motor vehicle owned and driven by defendant while on a duck hunting trip. At the time of the accident both parties were seventeen years of age; they appeared in the action by guardians ad litem. At the close of plaintiff's case, the trial court directed a verdict for defendant for the reason plaintiff had not shown defendant's conduct was wilful and wanton as required by SDC 44.0362. The five young men in the hunting party discussed the trip Sunday noon and, as plaintiff has urged that he was not a guest within the terms of our guest statute, his testimony is quoted:

> "Well, I had offered to take my car. But, he said that he would take his car. So, being as he was going to take his car, I told him I would stay away

from—I was going to work for my brother that afternoon. I told him I would stay away from my brother's place. I told him I would accompany him on this trip to look for ducks. I would take my time and go along on this trip and look for ducks on the agreement he would take his car."

 Plaintiff also testified that before the trial he disaffirmed this "agreement" and contends that it is against the policy of the law to force a legal status, i. e.: that of a guest in a motor vehicle on plaintiff when he has disaffirmed the contract which brought about such a status. SDC 44.0362 provides:

"No person transported by the owner or opperator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such willful and wanton misconduct contributed to the injury, death, or loss for which the action is brought; and no person so transported shall have such cause of action if he has willfully or by want of ordinary care brought the injury upon himself."

It has been considered by this court many times, Wakefield v. Singletary, 76 S.D. 417, 80 N.W.2d 84; Berlin v. Berens, 76 S.D. 429, 80 N.W.2d 79 and cases cited. Apparently realizing the amount of evidence required by this statute, plaintiff attempts to remove himself from its operation. He argues that a minor should, as stated in his brief, "be allowed to disaffirm and avoid any agreement that he may have made to establish the host-guest relationship" for the reason that minors "cannot be forced into the host-guest agreement, since they are unable to give their consent due to their legal disability." SDC 43.0105, which provides for disaffirmance of contracts of minors made under

the age of eighteen, is then cited. Neither the statute nor the argument is applicable for in our opinion no contract is involved. It is not every agreement that results in a binding, legally enforceable contract. Neither party may intend the writing to be a contract, Murphy v. Torstrick, Ky., 309 S.W.2d 767; it must contemplate the assumption of legal rights and duties, Trustees of First Presbyterian Church in Newark v. Howard Co. Jewelers, 12 N.J. 410, 97 A.2d 144; the lack of intention to say or do that which manifests a volition to assent may result in a lack of mutual consent, Federal Land Bank of Omaha v. Houck, 68 S.D. 449, 4 N.W. 2d 213. This is not to say that there must be a subjective meeting of the minds, Williston on Contracts, § 21, page 42 and Federal Land Bank of Omaha v. Houck, supra; nor that contracts may not be implied in fact or in law, St. John's First Lutheran Church v. Storsteen, 77 S.D. 33, 84 N.W.2d 725. The surrounding circumstances from which a contract stems are to be considered when interpreting its provisions. Unke v. Thorpe, 75 S.D. 65, 59 N.W.2d 419. A family relationship existing between persons may affect their liability on implied contract. See In re Weide's Estate, 73 S.D. 448, 44 N.W.2d 208. Offers made in jest, Keller v. Holdarman, 11 Mich. 248, 83 Am.Dec. 737, or under great mental excitement or anger which are not really intended by the offeror and so known to the offeree have been held not to be the basis of legal liability. The cases are collected and discussed in an older text, Page on Contracts, Second Edition, §§ 80-82. In Section 21, Williston on Contracts, Third Edition, cited by plaintiff, after recognizing these principles, the author comments "There seems no reason why merely social engagements should not create a contract if the requisites for the formation of a contract already enumerated exist." This sentence appeared over forty years ago in the first edition and apparently no courts have found favor with it as the authorities cited in the note do not support this comment. Rather they are opposed to it commencing with Pollock on Contracts, page 4, who mentions the familiar invitation to dinner and suggests there is no contract. In the note the author concludes "The real di-

fficulty, however, in finding a contract in such cases is that the parties do not manifest an intent to make a bargain, that is, to exchange a promise for an agreed consideration." To spell out a contract from this hunting trip of these young men, an enjoyable pastime with his friends as plaintiff described it, "would transcend reality", Scotvold v. Scotvold, 68 S. D. 53, 66, 298 N.W. 266, 272 and transform this sport and similar social affairs to a new legal field. Here it was clearly the friendship and social relation of these parties which resulted in plaintiff going on this hunting trip with defendant and their friends. It was not a commercial arrangement or one that removed him from his status as a guest. See Gunderson v. Sopiwnik, 75 S.D. 402, 66 N.W.2d 510, 512, where, quoting from a prior opinion, this court stated: "Such benefits as are compatible with hospitality, companionship or good fellowship accruing to the owner or operator are not sufficient to take the passenger out of the guest classification." It seems also that plaintiff would have the status of guest under his own theory which is—in entering an automobile, without further evidence plaintiff became a guest; by virtue of the claimed contract he became a non-guest passenger, i. e., an occupant for some kind of consideration (looking for ducks and losing a days work on Sunday); on reaching the age of eighteeen he disaffirmed the contract and thus, reverted to his status as guest.

Plaintiff makes some contention that his disaffirmance is of a consent he must give to the "host-guest agreement" or "host-guest relationship" as he terms it and cites Kudrna v. Adamski, 188 Or. 396, 216 P.2d 262, 16 A.L.R.2d 1297 in support. That court rejected the contract theory but held that a four-year-old child was not a guest within their guest statute on the theory the word guest in earlier cases was said to mean one who **accepts** a ride, that a four-year-old child had not legal capacity to exercise such a choice just as he was incapable of negligence and for the further reason that the child in custody of a parent does not enter an automobile of its own free will and cannot be said to have accepted an invitation to ride. Rocha v. Hulen, 6 Cal.App.2d

245, 44 P.2d 478, 482, was cited as reaching a like result under the California statute which reads "Any person who as a guest accepts a ride in any vehicle, * * *". These cases are the subject of comment in Lombardo v. De Shance, 167 Ohio St. 431, 149 N.E.2d 914, 66 A.L.R.2d 1313, where a person who voluntarily became intoxicated to such an extent that he could not know or understand what he was doing was held to be guest within the meaning of the Ohio guest statute.

 It it not necessary that we adopt the divergent reasoning of either of these theories as the persons involved were children of four and five years of age and an intoxicated person, all mentally incapable of making any decision. Here the plaintiff is a young man, nearly eighteen years of age, a high school graduate, the owner and driver of an automobile; there was no claim of mental incompetency and no reason why he should be excluded as a guest within our statute. While it does not appear that the specific point was raised this court has held young persons to be guests in many cases. See Martins v. Kueter, 65 S. D. 384, 274 N.W. 497 (sixteen years old); Schiltz v. Picton, 66 S.D. 301, 282 N.W. 519 (ten years old); Stoll v. Wagaman, 73 S.D. 186, 40 N.W.2d 393 (fifteen years old); Tennyson v. Kern, 76 S.D. 136, 74 N.W.2d 316 (high school junior); Chernotik v. Schrank, 76 S.D. 374, 79 N.W.2d 4 (nine years old). In the Tennyson case the disaffirmance of the claimed contract for compensation was by the minor defendant. We hold that the status of guest referred to in SDC 44.0362 includes plaintiff.

 The final question is whether the defendant's conduct was wilful and wanton. Plaintiff's evidence showed defendant was driving about 70 miles an hour on a normal gravel road, that as they approached a gradual grade defendant accelerated his speed to about 74 miles per hour and plaintiff told defendant to "take it easy"; that the grade was sufficient to hide the view on the other side; that there was a turn in the road not marked by any sign. When the turn first came into view plaintiff hollered "There is a

curve" and defendant slammed on his brakes 156 feet from the turn; that they didn't hold very much and the car went through a barbed-wire fence coming to rest 104 feet out in the field. There was testimony defendant told plaintiff before the accident he was going to get his brakes fixed, that he did not do so; that while he pumped his brakes to stop on the day of the accident he didn't have to but he did it because he liked them within an inch of the top. A photograph showed the road near the crest of the grade which confirms the testimony that the curve cannot be seen. This evidence is not sufficient to show that defendant as an ordinarily prudent person was of a reckless state of mind. Allen v. McLain, 74 S.D. 646, 58 N.W.2d 232. He had no knowledge of this curve in the road, and no notice of it and it appeared to stretch out ahead of him until he reached the crest; the photograph indicates it to be wide, well traveled and maintained and there was no evidence of other curves or of defendant's prior driving which indicates any carelessness. It is quite common that the speed of cars is increased on the incline of a hill and this was not so unusual as to be evidence of recklessness. Nor does the opinion of plaintiff that the brakes did not hold add enough to show the required reckless state of mind. In the cases cited by plaintiff in addition to faulty brakes, there were additional factors such as racing, rainy and foggy weather with 90 or 95 mile speeds. If it be said that, as plaintiff argues, sheep are better protected than humans, we refer to the court's opinion in one of his cited cases, Stevens v. Stevens, 355 Mich. 363, 94 N.W.2d 858, where the court comments on this seeming paradox. The standard has been fixed by the legislature and courts are bound by it.

The trial court was correct in directing the verdict and the judgment is affirmed.

All the Judges concur.