ROBE, Appellant v. AGER et al., Respondents

(129 N.W.2d 47)

(File No. 10096.   Opinion filed June 19, 1964)

Rehearing denied July 28, 1964.

Robert LaFleur, Graves & Lehnert, Rapid City, for Plaintiff and Appellant.

Whiting, Lynn, Freiberg & Shultz, Rapid City, for Defendants and Respondents.

HOMEYER, J.   This action was brought to recover damages for personal injuries sustained in a one-car accident which occurred in the early evening of February 11, 1961, about 43 miles west of Batesland, South Dakota.

The trial court granted a motion for directed verdict in favor of both defendants at the close of plaintiff's case in chief upon the ground her evidence failed to establish a case for jury consideration.

The complaint alleged at the time of the accident plaintiff-appellant and all other occupants except Mary Kube, now deceased, were passengers in the automobile and students of Plainview Academy at Redfield, South Dakota; that Mary Kube was a school teacher and dean of girls at such academy and at the time of the accident had the care, custody, control and supervision of the students and automobile which was being driven by the defendant, Yvonne Ager; that the defendants, Yvonne Ager and Mary Kube, or either of them, were negligent in the operation and control of the automobile causing the same to upset.

Defendants answered separately alleging contributory negligence more than slight, assumption of risk, and that plaintiff

was a guest. In addition defendant Kube in her answer moved to dismiss the complaint for failure to state a claim on which relief could be granted.

Construing the evidence and the deducible inferences in favor of plaintiff as we must it appears that plaintiff, defendant Ager, and three other girls, all teen-agers were attending Plain-view Academy, a Seventh Day Adventist co-educational high school at Redfield and, with the exception of Valerie Nelson, daughter of the superintendent and business manager, lived in the girls' dormitory at the school. They all belonged to a girls' club and one of the club projects was to refurbish parts of the dormitory with additional furniture. To assist them the girls had written congregations throughout the state soliciting funds. In response a member of the congregation at Batesland telephoned Miss Kube informing her a banquet was being planned for the following Sunday to raise funds and expressed a desire for some of the girls to be present to provide musical entertainment. Rev. Nelson, the superintendent, was present during the telephone conversation and volunteered use of his automobile to transport the group. He also provided his credit card to pay for car expenses and was later reimbursed by the school.

Miss Kube selected the girls to go on the trip, all of whom were musicians, except plaintiff, who was invited to go to give a short talk and because it also afforded her an opportunity to visit her parents who lived in that area. A sixth girl accompanied the group to Pierre where she was left to visit her parents.

The group departed from Redfield on Friday morning and arrived at Batesland that evening. Miss Kube drove the car. In the course of the trip the idea of going to Hot Springs to swim in Evans plunge was mentioned without any decision being made. The girls stayed in private homes. Saturday morning they attended Sabbath school and church services. In the afternoon they participated in a youth program at which plaintiff spoke on the advantages of a christian education and the other girls played musical instruments. On Saturday evening it was concluded to drive to Hot Springs to swim. The girls had no swimming suits, but expected to rent some at the plunge. Hot Springs is about 80 miles west of Batesland.

Defendant Ager was seventeen years of age, had a driver's license, and before the accident had driven about 750 miles. It was contemplated that she might do a portion of the driving on the trip to Batesland if Miss Kube became tired. She drove continuously from Batesland to the time of the accident with the consent and approval of Miss Kube. There were no remonstrances on her manner of driving. The testimony of witnesses fixed her speed at and immediately preceding the accident from 60 to 90 miles per hour. A logical inference is one of the tires blew out and she lost control of the car causing it to upset in the south ditch. As a result plaintiff sustained serious personal injuries.

The evidence is sufficient to support a finding that the defendant Ager was negligent in driving and the defendant Kube was negligent in supervising the manner in which the automobile was being driven. Plaintiff did not plead nor does she contend that either the driver or Miss Kube was guilty of wilful and wanton negligence. No agency relationship between the defendants Ager and Kube, or the school, is alleged.

The plaintiff advances three theories in asserting error or granting the motion for directed verdict. They are: (1) plaintiff had passenger status on the trip from Redfield to Batesland and the excursion to Hot Springs was incidental thereto; (2) Miss Kube was a salaried employee of the academy, the superintendent furnished the car and was reimbursed for travel expense by the academy, and thus there was compensation for the trip to Hot Springs; and (3) the guest statute does not apply because defendant Kube owed a duty to plaintiff separate and apart from the operation of the motor vehicle; that she violated that duty and was negligent and such negligence was the proximate cause of plaintiff's injuries.

We approach this matter by assuming without deciding plaintiff had a passenger status from Redfield to Batesland. Plaintiff argues on this basis and defendants do not seriously contend otherwise. The question we must determine is her status at the time of the accident. The evidence is without dispute that the swimming excursion was not known to the superintendent and was not contemplated when the group left Redfield; that an in-

conclusive reference thereto occurred enroute to Batesland and again at Batesland, but no final decision was made until after the Saturday evening meal. By that time what plaintiff was scheduled to do at Batesland had been accomplished, if it be considered a benefit to herself, her companions, or to her school. Whatever status plaintiff may have had on the trip to Batesland, it does not necessarily follow that she retained the same status on the excursion to Hot Springs when the accident happened. See Scotvold v. Scotvold, 68 S.D. 53, 298 N.W. 266.

In the recent case of Peterson v. Snell, 80 S.D. 496, 127 N.W.2d 142, we reiterated the rule to become a passenger for reward (1) the driver must receive some benefit from the transportation, either alone or in common with the rider, and (2) the benefit must be sufficiently real, tangible and substantial to serve as the inducing cause of the transportation and to completely overshadow considerations of mere hospitality growing out of friendship or relationship. In Snell we rejected the contention transportation provided by a teen-age member of a musical trio to another member in preparing a musical number at the request of their pastor to be given at a church program constituted carriage for compensation.

The sole purpose of the trip from Batesland to Hot Springs was to go swimming. No benefit was conferred upon the driver Ager, or upon the chaperoning dean, Miss Kube, other than mutual recreational enjoyment. The rule is too well established in this jurisdiction to require citation of authority that to remove a case from the guest statute a definite tangible benefit to the operator must be shown as the inducing and motivating influence for furnishing the transportation. Recreational enjoyment in which all the parties share does not meet this test. See Mitzel v. Hauck, 78 S.D. 543, 105 N.W.2d 378.

Consequently, if the trip to Hot Springs was an independent journey for a social purpose and had no relationship to the reason for the trip to Batesland, it must be determined plaintiff possessed a guest status when injured. We find no controlling precedent in this state and slight precedent from other jurisdictions. In Tennyson v. Kern, 76 S.D. 136, 74 N.W.2d 316, there was an

express agreement by which infant passengers agreed to share expenses on a trip from Cottonwood to Rapid City for a high school banquet. Before commencing on this trip defendant proceeded in the opposite direction to get a suit from a dry cleaner at Philip. Plaintiff accompanied him on this trip and an accident occurred in which he was injured. We held there was no rational basis for an inference that the express agreement to share expenses from Cottonwood to Rapid City was broad enough to include a side trip to Philip.

In Burt v. Lochausen, Tex.Civ.App., 244 S.W.2d 915, 249 S.W.2d 194, plaintiff's decedent Burt lived 14 miles west of El Paso and had made application for some life insurance. He drove his own car to the agent's office, left the car, and went with defendant to a doctor's office for examination. The examination was completed by noon and they went to a nearby town for lunch and refreshments in defendant's car. Burt then permitted his wife to take his car home and defendant volunteered to drive Burt home later in the day. They spent the afternoon driving around and socializing and about 6:45 p. m. started for Burt's home with defendant driving and the accident happened. Burt was held to be a guest as a matter of law since the examination had been completed and any benefits accruing to the driver such as good will, possibility of selling additional insurance, encouraging other prospects, etc., were uncertain, remote and speculative and not sufficiently tangible to constitute compensation.

In Lyon v. City of Long Beach, 92 Cal.App.2d 472, 207 P.2d 73, defendant daily transported fellow employees to work for a monetary consideration. Upon arriving at the plant two of the passengers alighted and defendant and two others drove to a nearby cafe for coffee and the accident occurred while returning to the plant. The court held plaintiff a guest as a matter of law and refused to accept appellants' view "that the evidence would have justified an inference that the transportation agreement was broad enough to cover the trip in question. * * * We see no escape from the conclusion that the contract of carriage had been fully performed at the time the decedent suggested that they 'go down to Long Beach and get us something to eat.' "

In McGrath v. Parsons, 312 Mass. 476, 45 N.E.2d 384, plaintiffs were employees of defendant fishing ship captain who volunteered to take them to Gloucester to deliver Christmas presents and bring them back to work the day after Christmas. The accident happened enroute to Gloucester. The court held as a matter of law plaintiffs were guests and the transportation to and from Gloucester was not a part of their employment or incidental thereto.

Plaintiff cites Peters v. Hoisington, 72 S.D. 542, 37 N.W.2d 410 as authority for the proposition that the original reason for plaintiff's presence in the automobile is controlling even when the parties go on a side trip. We do not so interpret that case. Although there was some intermediate socializing in the Peters case, the plaintiff at the time of the accident was rendering to the driver the original benefit contemplated and there was no deviation from the benefit rendered the operator.

We believe no reasonable inference can be deduced from the evidence except the trip to Hot Springs was for the mutual pleasure, entertainment and enjoyment of all the occupants of the automobile and had no rational relationship to the purpose of the trip to Batesland.

Plaintiff also argues since defendant Kube was a salaried employee of the academy and the superintendent furnished the automobile and the academy reimbursed him for gas and oil, there was compensation provided by a third party and plaintiff had passenger status. Recognizing that the compensation for the transportation must be to the owner or operator, she contends Miss Kube had a nondelegable duty to her girl companions and occupies the same position as if she were actually driving. We are not impressed with this theory.

The compensation for the transportation need not pass from the passenger to the operator. If the operator receives a direct benefit from a third party, the service is not without compensation and there is no guest relationship. McGuire v. Armstrong, 268 Mich. 152, 255 N.W. 745; Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N.W.2d 451; Born v. Matzner's Estate, 159 Neb. 169, 65 N.W.2d 593. See also Forsling v. Mickelson, 66 S.D. 366, 283 N.W. 169.

■ The fact Miss Kube received a salary from the academy is too remote a consideration to form the basis of a claim that she was compensated by the academy for driving plaintiff to and from Redfield to Batesland, and much less to Hot Springs. The inference is that the chaperoning dean was glad to be of service to the plaintiff and the other students in accompanying them on the trip and she did this gratuitously. There is no evidence that Miss Kube was required to make the trip. Payment of gas, oil, and car expense by the academy would not be compensation to Miss Kube. Cf. Casper v. Higgins, 54 Ohio App. 21, 6 N.E.2d 3.

■ Although no agency relationship is pleaded and the academy is not named as a defendant in the action, in oral argument it was contended that an agency relationship existed between the driver and the academy, the teacher and the school, and between the driver and teacher. As we have stated, the trip to Hot Springs was not within the contemplation of the parties when they departed from Redfield. The superintendent had no knowledge of such trip and it was beyond any reasonable extension of the purpose of the trip to Batesland. The superintendent testified there were no restrictions on the use of the car, but we do not interpret this to being tantamount to authority to make a purely social trip to a destination 80 miles removed from the place where the group was authorized to go. The evidence would warrant a finding that the superintendent authorized Miss Kube to permit defendant Ager to drive to Batesland, but the trip to Hot Springs was without prior authorization. See Antonen v. Swanson, 74 S.D. 1, 48 N.W.2d 161, 28 A.L.R.2d 1. The defendants, Ager and Kube, would each be liable for their own tortious acts, but not as agents of the academy. SDC 3.0402; Cockran v. Rice, 26 S.D. 393, 128 N.W. 583, Ann.Cas.1913B, 570; Fessenden v. Smith, Iowa, 124 N.W.2d 554; Malloy v. Fong, 37 Cal.2d 356, 232 P.2d 241.

The final theory urged is that defendant Kube was negligent in supervising the driving of defendant Ager and this was actionable negligence separate and distinct from the negligence of the driver. This theory presupposes a guest relationship between the driver and plaintiff, but predicates liability of the de-

fendant Kube upon a failure to perform a common-law duty independent of the operational negligence of the driver.

█    The owner or person in charge of the operation of a motor vehicle may be guilty of negligence if he permits an incompetent, inexperienced, and knowingly reckless and accident prone person to drive, Bock v. Sellers, 66 S.D. 450, 285 N.W. 437, especially when he remains in the car and fails to protest or remonstrate against the careless and reckless driving. Naudzius v. Lahr, 253 Mich. 216, 234 N.W. 581.

A somewhat similar situation was presented in Ortman v. Smith, 8 Cir., 198 F.2d 123, involving the South Dakota guest statute. The defendant driver was a twelve-year-old girl who had driven about 500 miles before the accident. The father of the driver was named as a defendant on the basis of negligent entrustment of the car to his minor child. Borrowing from the Michigan case of Naudzius v. Lahr, supra, the court said: "The statute is specific in eliminating ordinary negligence as a basis of liability and requiring the actionable gross negligence or willful or wanton misconduct to be a proximate cause of the accident. Even if defendant's negligence in permitting Clarence to drive was gross, it would not be actionable if Clarence was guilty of no negligence. Riser v. Riser, 240 Mich. 402, 215 N.W. 290. Upon the same reasoning, if the accident was caused only by ordinary negligence on the part of the driver, defendant's gross negligence in permitting him to drive could not have been a proximate cause of the injury. In others words, if Clarence's ordinary negligence be eliminated as a cause, defendant's prior gross negligence had no effect upon the accident." The court then said: "The trial court evidently adopted and applied substantially the same reasoning. In ruling upon the motion for directed verdict it observed that if negligence on the part of the father in permitting the girl to take the car and negligence on her part in driving it when she was under age were conceded 'that has nothing to do with the proximate cause of the accident.' It pointed out that there could be no hope of plaintiff's recovery in the action in the absence of proof of negligence in the operation of the car which was the proximate cause of the injury. Being convinced that the negligence in the operation of the car

which was the proximate cause of the accident was not 'wanton or willful misconduct,' the court concluded there was no submissible case under South Dakota law."

■ We do not believe that the legislature when it provided the owner or operator of a motor vehicle the cloak of immunity to a guest passenger absent wilful and wanton negligence, intended to shed the cloak and allow liability on common law responsibility for ordinary negligence in entrustment or supervision. If the driver or the supervisor was free from wilful and wanton misconduct, there can be no recovery.

The Iowa court in Hardwick v. Bublitz, 253 Iowa 49, 111 N.W.2d 309, a negligent entrustment case, said: "Protection, rightly, or wrongly granted these parties in guest cases by the legislature's clear directive, cannot be removed by fine distinctions as to how the owner may by found negligent, whether by negligent entrustment, negligent maintenance of the vehicle, imputed negligence or by some other violation not involved in the actual use of the vehicle. In all cases where the guest is the injured party liability is reduced and no recovery against the owner or operator can be obtained under an allegation of mere negligence against either or both. We can give the statute no other meaning, nor subscribe to the legislature any other intent." We apply the same reasoning to cases involving negligent supervision.

We have considered the cases of DeGooyer v. Harkness, 70 S.D. 26, 13 N.W.2d 815, (electrical shock administered to student at school initiation) and Bucholz v. City of Sioux Falls, 77 S.D. 322, 91 N.W.2d 606 (minor injured on police shooting range) cited by plaintiff. Suffice to say these cases involved ordinary negligence and are not applicable. The legislature has placed motor vehicle accidents involving guests without compensation in a separate category. SDC 44.0362.

Other assignments of error urged by plaintiff have been considered. We find no prejudicial error therein.

Affirmed.

BIEGELMEIER, P. J., and ROBERTS and RENTTO, JJ., concur.

HANSON, J., dissents.

HANSON, J., (dissenting.) I am unable to agree.

Plaintiff is entitled to have the facts reviewed in the light most favorable to her and to have the benefit of all the fair and reasonable inferences arising therefrom. So viewed she should not be considered and treated as an adult with the freedom of choice implicit in that status. She was a minor and attended the Plain View Academy at Redfield as a tuition-paying student. As such she was under the constant and continuing care, control, and supervision of the school. It stood in loco parentis to her.

Plaintiff was injured while on a fund raising trip for the academy. During the entire trip she rode in a car furnished by the school which also furnished or paid her expenses. This money raising group of girls was in the care, custody and control of the defendant Dean of Women at all times. At the outset of the trip it can hardly be questioned that plaintiff was a passenger, rather than a guest, in the school car. "In general, when the relationship of host and guest commences and terminates depends upon the nature and extent of the gratuitous undertaking, including any act necessarily incidental to the accomplishment of the gratuitous undertaking, in order to carry out its prearranged purpose. The relationship of host and guest is determined as of the time of the beginning of the transportation; if at that time a rider is a guest within the meaning of the guest statute, his status ordinarily remains unchanged throughout the journey." 8 Am.Jur.2d, Automobiles and Highway Traffic, § 476, p. 41. In my opinion this rule applies here. The trip should be viewed as a whole and plaintiff's status as a passenger never changed. As a minor student under the control of the Dean of Women she did not have any freedom of choice in the matter.

The group of girls arrived in the small town of Batesland Friday evening. They attended Sabbath services on Saturday morning. In the afternoon they participated in a church meeting at which plaintiff delivered a talk "on the advantages of a Christian education." Dinner was served by the church in the evening. However, the girls had not concluded their mission. The fund

raising banquet was to be held at the Batesland Church the following Sunday evening. The girls were naturally expected to attend this climatic function which was the whole object of their presence in the southwestern section of the state. In the meantime the girls had to occupy their time in some manner. It is a fair inference that the defendant Dean of Women agreed to reward the girls by taking them to Hot Springs to swim in the Evans Plunge. As a result, the group started to Hot Springs in the school car. The expenses were paid by the school and the girls were in the custody, care, and control of the Dean of Women. This was a reasonable and logical means of occupying the girls' time and keeping them together as a group. It should not be viewed as an isolated and segmented departure from the whole purpose of the trip as it can fairly and reasonably be inferred to be an incidental and integral part thereof. As this court said in the case of Kleinhesselink v. Porterfield, 76 S.D. 577, 83 N.W.2d 191, "Reason impels the conclusion that such sociability as added to the pleasure of their mission was but incidental to its primary purpose."

Under the circumstances the Dean of Women should not be allowed to use the guest statute as a shield against her admitted failure to exercise reasonable care for the protection of the minor students under her control. She was neither the owner nor operator of the automobile. Section 320 of the Restatement of Torts pertinently sets forth her obligation to plaintiff and the other school girls as follows: "Duty of Persons Having Custody of Another to Control Conduct of Third Persons. One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty of exercising reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor (a) knows or has reason to know that he has the ability to control the conduct of the third persons, and (b) knows or should know of the necessity and opportunity for exercising such control." This section applies to teachers or other persons in charge of a public or private school.

I would therefore reverse and have the issue of plaintiff's status in the automobile at the time of the accident determined by the jury.