BOCK, Respondent v. SELLERS, et al, Appellants

(285 N. W. 437.)

(File No. 8179.   Opinion filed April 20, 1939.)

C. A. *Wilson,* of Hot Springs, and *Williams & Sweet,* of Rapid City, for Appellants.

W. P. *Rooney,* of Hot Springs, and *H. F. Fellows,* of Rapid City, for Respondent.

RUDOLPH, J.   The plaintiff, Abbie L. Bock, was struck by an automobile driven by defendant Fred M. Sellers, Junior, as plaintiff was crossing the street in the city of Custer, South Dakota.   Plaintiff suffered substantial injuries, and in this action brought to recover therefor, the jury returned a verdict in her favor.   Defendants have appealed.

Three questions are presented by this record, all of which raise the question of the sufficiency of the evidence to support the verdict of the jury.   These questions are: First, is the evidence sufficient to show that the defendant Fred M. Sellers, Junior, was

negligent in the operation of the automobile which he was driving; second, does the evidence show as a matter of law the contributory negligence of the plaintiff; and, third, is the evidence sufficient to support the verdict against the defendant Fred W. Sellers, father of Fred M. Sellers, Junior, and owner of the car but who was not in the car at the time of the accident. The general rules which must guide the court in its determination of these questions of the sufficiency of the evidence have often been stated. A few of the many cases decided by the court where similar questions were involved are: Whaley v. Vidal, 27 S. D. 627, 132 N. W. 242; Whaley v. Vidal, 27 S. D. 642, 132 N. W. 248; Bulboltz v. Chicago M. & St. P. R. Co., 47 S. D. 512, 199 N. W. 782; Plucker v. Chicago M. & St. P. R. Co., 52 S. D. 554, 219 N. W. 254; Miller v. Sioux Falls Traction System, 53 S. D. 649, 222 N. W. 270; Taecker v. Pickus, 58 S. D. 177, 235 N. W. 504; Campbell v. Jackson, 65 S. D. 154, 272 N. W. 293; Alendal v. Madsen, 65 S. D. 502, 275 N. W. 352. A further statement of the rules announced in the foregoing opinions would be but repetition. It is apparent from a statement of these questons that the materal evidence must be set forth.

The plaintiff testified that about 6 o'clock in the evening on the 30th day of January, 1937, she was walking toward the business section of town; that when she reached a point on Crook Street at a point about 50 to 75 feet beyond an intersecting street, she started to cross Crook Street diagonally. Before starting across this street, she looked in both directions for approaching cars, and observed a car about three blocks to the east. Plaintiff remembers then starting across the street, and she has no memory from this point until the time she regained consciousness after the accident. It is undisputed in this record that at the time in question, ice and snow were on the ground, and the street was icy and slippery. The sheriff of Custer County testified that he arrived at the scene of the accident shortly after its occurrence, and while there made certain observations and took certain measurements. He testified:

"At that time I observed tracks of an automobile having skidded. I found a place where the blood was on the snow. That was pointed out to me, the place where the collision took place. * * * I could see in the snow where the car actually stopped, the black

marks left on the snow. * * * That snowy or icy condition extended the whole length of that block. * * * I observed the place where skid marks first started. * * * From the point where the skid marks first start to the point where the blood showed is 72 feet. * * * It was 60 feet from the blood marks to the north side of the street, and 46 feet from the blood marks to the south side of the street. * * * The skid marks went 27 feet past the blood marks. * * * The car track from the point where I could first observe it was on the south side of the street. * * * These skid marks began 72 feet east of this blood spot. They went in a direct line; they came straight down the street. I didn't notice any breaks in those marks. * * * The skid marks were approximately in a straight line from east to west, then they turned southwest just before they got to the blood spot. My best recollection is about 25 feet before they got to the blood spot it swerved fairly sharp to the left, then the skid marks continued from the blood spot diagonally across to the left 27 feet after this one particular jog. * * * I think these skid marks were a little to the south of where the ordinary line of travel would be. This mark 72 feet from the blood spot, is where it showed black on the snow or ice. That would indicate to me that the brakes were set. The brakes may not have been set solid but they had been applied so it was a black mark on the snow or ice."

The defendant Fred M. Sellers, Junior, testified that just prior to the accident, he had been driving along Crook Street from the east toward the west for a distance of three blocks. (Defendant later changed this distance to one block, but the jury was justified in accepting his first version as the fact, which was the same as given at the examination before trial.) He testified that he was driving about 20 miles an hour in about the center of the road; that he did not see the plaintiff until he was within approximately 150 feet from her at which time she was between 50 and 60 feet west of the intersection crosswalk, and about 30 feet south of the north sidewalk; that when he saw her, she was walking in a south westerly direction; that he slowed down his car; that when he was about 70 feet from her, he set the brakes and sounded the horn; that he had sounded the horn once before; that when he sounded the horn this second time and set his brakes, it appeared to him that the plaintiff stopped at the point which she had then reached,

which was 4 to 6 feet north of the center line of the street. Defendant testified that he traveled about 25 feet with his brakes set, and it then appearing to him that the plaintiff had stopped, released his brakes and immediately thereafter plaintiff again started walking along her course. That, when plaintiff again started walking, he was about 25 or 30 feet from her, and that he then set his brakes and turned his car toward the left as quickly as he could, but was unable to avoid striking her; then, after striking her, he slid an additional 27 feet before he could bring his car to a stop. The evidence discloses that at the east side of the intersection east of the place where the accident occurred, a ditch 18 inches deep and 2 feet wide extends out into Crook Street from the north 38 feet, and a similar ditch extends into the street from the south about 13 feet. These ditches cut down the traveled portion of Crook Street at the intersection to approximately 54 feet, but beyond the intersection and at the point where the accident occurred there are no obstructions and "the whole width of the street was open" and subject to travel. The width of the street is 106 feet.

This statement of the evidence is sufficient for our present purpose. Appellant contends that the evidence is "wholly undisputed as to what occurred just prior to and at the time of the accident." Were it not for the physical facts and the testimony of the sheriff of Custer County, it might be that the testimony of Fred M. Sellers, Junior, would stand undisputed in this record, but we are of the opinion that the testimony of the sheriff and the facts as disclosed after the accident dispute many important details in the testimony as given by the driver of this car. Viewed in its light most favorable to the plaintiff, the jury could conclude from the sheriff's testimony that the car was out of control to the extent that it proceeded forward after the brakes were set a distance of 99 feet. The sheriff testified that the marks made by the car disclosed that the brakes were set 72 feet beyond the point where the accident occurred, that these marks went in a direct line without any breaks, and that the marks continued 27 feet beyond the point where the plaintiff was struck. This testimony in effect denies the defendant's whole version of how the accident occurred. Defendant professed to have his car under control, to have applied his brakes, to have released them when he claimed

that plaintiff stopped, and to have struck plaintiff only because she started again to walk when defendant was so close to her that it was impossible to avoid striking her. It is obvious, if the jury believed the testimony given by the sheriff, it was justified in concluding that the defendant never released his brakes after they were once set, and that he proceeded almost in a direct line with his brakes set for a distance of 72 feet, struck the plaintiff, and continued on 27 feet more before he could bring his car to a stop. This testimony also disputes' rather emphatically the testimony of the defendant that he was driving his car 20 miles an hour. In this connection it might also be pointed out that under the record as made, the jury could reasonably find that it was the car driven by defendant that plaintiff observed three blocks to the east as she started crossing the street, and that when she reached a point somewhat past the center of this street, defendant's car had traveled the entire distance of these three blocks. The evidence is ample in our opinion to support a conclusion by the jury that the defendant was negligent.

██ Does the evidence show as a matter of law the contributory negligence of the plaintiff? This court has heretofore had occasion to consider the rights of a pedestrian crossing a street diagonally in the middle of the block or at a point other than an intersection crosswalk. In the case of McKeon v. Delbridge, 55 S. D. 579, 226 N. W. 947, 948, 67 A. L. R. 311, it was held:

" 'A pedestrian has a right to cross a street diagonnally in the middle of the block, subject to the duty of making reasonable use of his senses in order to observe impending danger, and whether he is in the exercise of ordinary care in so doing is usually for the jury.' * * *

" 'There is no rule of statute or ordinance which prohibits "jay walking," and it therefore is not negligence per se. Whether or not it would be negligence under a given state of facts is a question of fact for the jury'."

The rule is established; it is but for us to apply the rule to the facts as disclosed in this case. Plaintiff looked for approaching cars as she started across the street. Upon the question of whether she looked again the record is silent, but it is undisputed in the record that the only car on the street approaching plaintiff's

point of crossing was that car she had observed three blocks to the east. Under these circumstances it was within the province of the jury to find that plaintiff could reasonably conclude there was no danger from a car approaching at that distance, and dismiss the same from her mind. In this respect the facts are entirely different than the facts in the case of Jamieson v. Gerth, 61 S. D. 514, 249 N. W. 921. There the evidence established that two motor vehicles were approaching an intersection at substantially the same distances. The plaintiff observed the car coming from the south and then proceeded to look to the north. No car was approaching from the north. Without again looking toward the south he proceeded on into the intersection. We think it clear in that case the duty was upon the plaintiff, because of the relative distances of the two cars from the intersection, and because there was no danger of approaching cars from the north, to again look for and observe the car which he had seen approaching from the south. But in that case an entirely different situation is presented. Here plaintiff at the time she started crossing the street saw no car and there was no car closer than three blocks distant. Plaintiff could reasonably conclude, at least the jury might so find, that there was no danger from a car approaching from such distance. There is, of course, the further fact in this case; plaintiff had reached a point in her crossing several feet beyond the center of the street, and approximately the middle of the traveled portion of the street. It was reasonable for her to expect that no driver of a car coming from the east would run her down at this point when there were 60 feet of clear driving space to the north of her. Certainly, it seems to us that the jury would be justified in concluding that, once plaintiff passed the center line of this street under the conditions which there confronted her, it was a reasonable precaution for her then to give her attention to looking toward the west for approaching cars, and that it was reasonable for her to dismiss from her mind any thought of danger from a car coming from the east. Further discussion seems to us to be unnecessary. Under the rule announced in the McKeon v. Delbridge case, supra, we think the question of contributory negligence of the plaintiff was for the jury. No purpose would be served in citing cases from other jurisdictions. Many cases are collected in the annotations appearing in 14 A. L. R. 1176, and 67 A. L. R. 313.

■■ We consider now the question of the liability of the father, Fred W. Sellers. This court has heretofore refused to follow the so-called "family purpose doctrine." Behseleck v. Andrus et al., 60 S. D. 204, 244 N. W. 268, 88 A. L. R. 596. However, in this case respondent does not contend for any such doctrine or seek to hold the father liable on any theory of agency. Respondent contends that the evidence is sufficient to show that the father was himself negligent in permitting the son to drive a car. It is now generally held that, "An owner who lends his automobile to another, knowing that the latter is incompetent, reckless, or careless driver, is liable for such person's negligence; the owner's liability in such cases is based upon his own negligence in intrusting the automobile to such person. Intrusting the car to a minor child known to be a reckless and incompetent driver * * * constitutes an act of negligence for which the owner is liable." 5 Am. Jur. 696. We believe this general holding is supported by sound reasoning. See cases cited in 36 A. L. R. 1150; 68 A. L. R. 1014; 100 A. L. R. 926. Applying this rule we are of the opinion that the evidence is sufficient to support the verdict against the father. Fred M. Sellers, Junior, testified that he was seventeen years of age; that on the evening in question he told his father he was going to take the car, and his father said "All right;" that prior to the accident under consideration he had had four accidents while driving his father's cars, and of which his father was advised. The night police of Custer testified, as follows: "There was an occasion prior to January of this year, when I had a talk with Fred Sellers, Sr., about his son driving an automobile in Custer. It was over a year ago. He went down the street pretty fast and I followed him down. He blowed some flares out at the other end of town at the underpass, some flares left there to guard the underpass. I chased him at that time. I turned the siren on and he wouldn't stop. I wasn't able to catch him; I had a broken spring. I went to see Mr. Sellers. The manner of the boy's driving was talked about. I don't remember the words of the conversation, I think it was about his fast driving and about the flares. Well, I think it was in substance probably that the boy would have to stop driving in that manner around Custer. I do not remember what was said. I don't remember how long it has been since I seen him drive a car around Custer. He has driven quite often

around Custer during the last three and a half or four years. No, during the last few years, or any part of the last few years, I do not know what his general reputation around Custer was for being a careless or careful driver. I haven't heard it discussed, but I have heard it talked about in the pool halls, and I suppose on the street, by quite a few people. I do not remember the names of the people. In substance they said that he was driving too fast."

The plaintiff also testified that Fred M. Sellers, Junior, had a reputation in that community for fast and reckless driving. Under this evidence, we believe that it was within the province of the jury to say whether or not the father was negligent in permitting the son to drive his car on this occasion.

The judgment and order appealed from are affirmed.

All the Judges concur.