2001 SD 38

**Michael Lee WILSON, Plaintiff and Appellant,**

v.

**Eric G. LEWNO, Defendant,**

and

**Dakota Silo Systems, Inc., a/k/a Dakota Silo, Inc., Defendant and Appellee.**

No. 21198.

Supreme Court of South Dakota.

Considered on Briefs on March 22, 2000.

Decided March 21, 2001.

Rehearing Denied May 1, 2001.

Renee Christensen of Bonynge & Christensen, Sioux Falls, SD, Attorneys for plaintiff and appellant.

Cheryle Wiedmeier Gering of Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, Attorneys for defendant and appellee Dakota Systems.

KONENKAMP, Justice.

[¶ 1.] Michael Wilson appeals a summary judgment for the defendants in his action for negligent entrustment of a motor vehicle. We reverse and remand.[1]

**Background**

[¶ 2.] On April 26, 1997, Wilson and a friend left Sioux Falls to travel to Water-

---

1. Because of the similarity of issues in this case and *Estate of Trobaugh v. Farmers Insurance Exchange et al.*, 2001 SD 37, 623 N.W.2d 497, release of this decision coincides with the release of the decision in *Trobaugh.*

town and visit the friend's mother. Before leaving, Wilson's friend also arranged to meet with an acquaintance of his, Eric Lewno, at Lewno's home in South Shore. Wilson and his friend drove directly to South Shore and arrived at Lewno's residence in the late afternoon or early evening. After awhile, Wilson, his friend, Lewno and Lewno's girlfriend eventually went to town and drank at two different bars in the South Shore community. The foursome left the last bar at approximately ten p.m. Lewno then offered to give Wilson and his friend a ride in a Mustang automobile that he had been doing some bodywork on and that he was driving that night. During the ride, Lewno attempted a sharp turn and flipped the Mustang over in the ditch. The accident allegedly caused serious and permanent bodily injury to Wilson.

[¶ 3.] Wilson later learned that the Mustang Lewno drove the night of the accident was owned by Dakota Silo Systems, Inc. (Dakota), Lewno's employer and a corporation owned and operated by Lewno's father. Wilson also learned that Lewno had suffered alcohol problems since his youth and that, several years before the accident, his driver's license had been suspended for a period of twenty-five years. Wilson brought a negligence action against Eric Lewno and an action for negligent entrustment of a motor vehicle against Dakota. Dakota moved for summary judgment. The motion was granted and the order was certified as final pursuant to SDCL 15-6-54(b).[2] Wilson appeals.

### Genuine Issues of Material Fact on Negligent Entrustment

[¶ 4.] Viewing the evidence in a light most favorable to Wilson yields genuine issues of material fact sufficient to defeat summary judgment for Dakota on negligent entrustment of its motor vehicle. *See* SDCL 15-6-56(c); *Sorrels v. Queen of Peace Hosp.*, 1999 SD 133, ¶ 5, 601 N.W.2d 606, 608. This Court has long recognized the tort of negligent entrustment, first outlining its elements in *Bock v. Sellers*, 66 S.D. 450, 457, 285 N.W. 437, 440 (1939):

> It is now generally held that, "An owner who lends his automobile to another, knowing that the latter is [an] incompetent, reckless, or careless driver, is liable for such person's negligence; the owner's liability in such cases is based upon his own negligence in intrusting the automobile to such person. Intrusting the car to a minor child known to be a reckless and incompetent driver ... constitutes an act of negligence for which the owner is liable." 5 AmJur 696.

*See also Robe v. Ager*, 80 S.D. 597, 606, 129 N.W.2d 47, 51 (1964) (owner or person in charge of operation of motor vehicle may be guilty of negligence if he permits an incompetent, inexperienced, and knowingly reckless and accident prone person to drive).

[¶ 5.] *Bock* and its progeny make clear that an essential element to this cause of action is an act of entrustment or consent to use the subject vehicle. *See* 7A AmJur2d *Automobiles and Highway Traffic* § 643 (1980) (liability for negligence of incompetent driver to whom motor vehicle is entrusted arises from act of entrustment with permission to operate it). *See also Jackson v. Searcy*, 628 So.2d 887, 889 (Ala.Civ.App.1993) (essential ingredi-

---

2. SDCL 15-6-54(b) provides:

When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

ents of cause of action for negligent entrustment include an entrustment of the vehicle). Dakota argues that there is no showing of any express act of entrustment or consent in the present record. Entrustment or consent may be implied, however. *See American Family Ins. Group v. Howe*, 584 F.Supp. 369, 371 (D.S.D.1984). To establish implied entrustment or consent, there must be a "showing of [a] course of conduct or practice known to the owner and acquiesced in by him that would lead to an implication of permission for a particular venture." *Western Casualty & Surety Co. v. Anderson*, 273 N.W.2d 203, 205 (S.D.1979). Or as amplified in *Howe*, 584 F.Supp. at 372:

> Implied permission arises upon consideration of such factors as the past and present conduct of the insured, [the] relationship between the driver and the insured, and [the] usage and practice of the parties over an extended period of time prior to the use in question. In addition, some courts have stated that the usage and practice of the parties should be such that would indicate to a reasonable mind that the driver had the right to assume permission under the particular circumstances. (citations omitted).

[¶ 6.] Here, deposition testimony establishes that Lewno's father owned and operated Dakota and was responsible for its business and management affairs. While the father maintained that he prohibited Lewno from driving any corporate vehicles, there is substantial testimony in the record that Lewno frequently did so nonetheless. Lewno's girlfriend testified that she dated Lewno for approximately a year before the accident, that she was with him two or three times a month, and that he frequently drove her around in the Mustang while they were together. She further testified that she thought Lewno owned the Mustang because "he pretty much drove [it] everywhere" and that for a long period of time she was not even aware his driver's license had been revoked.

[¶ 7.] There is also testimony that Lewno was allowed to drive other corporate vehicles. Lewno's girlfriend testified that he not only drove the Mustang, but other corporate vehicles before the accident to such destinations as Dakota's office and the home of Lewno's parents. Lewno himself admitted that he occasionally drove service trucks after obtaining permission from his father or his older brother and that his brother was usually with him when he drove.

[¶ 8.] In addition, the depositions establish that, from December of 1996 to the time of the accident, Lewno's father entrusted possession of the Mustang to Lewno to complete some bodywork on the vehicle. During this time, the car was located in a garage that Lewno rented, and Lewno testified that after the vehicle was fixed, his father even agreed to sell it to him.

[¶ 9.] In view of the above testimony and, particularly, the evidence that the father entrusted the Mustang to Lewno with the intent to sell it to him, the credibility of the father's claim that he did not intend for Lewno to actually drive the vehicle should be tested in a jury trial. Genuine issues of material fact exist on whether Lewno had implied permission to use the Mustang on the night of the accident. *See American Family Ins. Group*, 584 F.Supp. at 372 (whether implied permission to use vehicle existed at time of accident presents question of fact).

[¶ 10.] Reversed and remanded.

[¶ 11.] MILLER, C.J., and SABERS and GILBERTSON, JJ., concur.

[¶ 12.] AMUNDSON, J., dissents.

AMUNDSON, Justice (dissenting).

[¶ 13.] For the reasons set forth in my writing in *Estate of Trobaugh*, 2001 SD 37, 623 N.W.2d 497, I respectfully dissent.