2001 SD 37

The ESTATE OF Douglas Leroy TRO-
BAUGH, Deceased, By and Through
Kendra TROBAUGH, Personal Repre-
sentative of the Estate, Plaintiff and
Appellant,

v.

FARMERS INSURANCE EXCHANGE,
Defendant and Appellee.

The Estate of Douglas Leroy Trobaugh,
Deceased, By and Through Kendra
Trobaugh, Personal Representative of
the Estate, Plaintiff and Appellant,

v.

Michael Thomas Sylvester, Thomas H.
Juffer, and Jefferson Township, a po-
litical subdivision of Union County,
South Dakota, Defendants and Appel-
lees.

The Estate of Douglas Leroy Trobaugh,
Deceased, By and Through Kendra
Trobaugh, Personal Representative of
the Estate, Plaintiff and Appellant,

v.

Amy Sylvester, Defendant and Appellee.

Nos. 21032, 21203 and 21355.

Supreme Court of South Dakota.

Argued Feb. 15, 2000.

Nos. 21032, 21203 Considered on
Briefs March 21, 2000.

No. 21355 Considered on Briefs
Sept. 19, 2000.

Decided March 21, 2001.

Rehearing Denied May 1, 2001.

Michael J. McGill, Beresford, for plaintiff and appellant.

Kristine L. Kreiter of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants and appellees.

KERN, Circuit Court Judge.

[¶ 1.] Estate of Trobaugh (Estate) filed three separate suits seeking damages resulting from Douglas Trobaugh's (Trobaugh) death in an automobile accident.

### APPEAL # 21302

[¶ 2.] The first suit against Farmers Insurance Exchange (Farmers) sought a declaration that the driver of the car, Mike Sylvester (Mike) was a permitted driver of the 1986 Ford Taurus involved in the fatal November 30, 1996 accident. Estate contended that although the car was titled and insured in Thomas Juffer's (Juffer) name, coverage for the accident was available under the omnibus clause of Juffer's policy. However, Farmers sought summary judgment contending there were no genuine issues of material fact since Mike had neither express nor implied permission from Juffer to drive the Taurus and was not a permitted driver. The trial court granted summary judgment in favor of Farmers. We reverse.

### APPEAL # 21203

[¶ 3.] The second suit brought as a result of this accident was against Mike, Juffer, and Jefferson Township. Estate alleged Juffer negligently entrusted the Taurus to Mike. Estate also moved to amend its complaint to add Amy Sylvester (Amy), Mike's wife, as a defendant for negligently entrusting the vehicle to Mike. The trial court granted Juffer's motion for summary judgment and denied Estate's request to amend its complaint. We reverse.

### APPEAL # 21355

[¶ 4.] This suit arose when Estate filed a separate action against Amy for negligent entrustment. Amy did not answer the complaint. Instead, she moved for dismissal under SDCL 15–6–12(b)(5), or in the alternative, summary judgment based on matters outside of the pleadings. The trial court granted Amy's motion. We reverse.

## CONSOLIDATION

[¶ 5.] These actions were filed from one settled record, and raise similar issues and therefore, for purposes of judicial economy, are hereby consolidated.

## FACTS

[¶ 6.] Juffer, of Yankton, South Dakota, provided vehicles for his adult children, which were titled and insured in his name. His daughter Amy received a 1988 Nissan Sentra. Amy was listed as the permitted driver and named insured although the vehicle was titled in Juffer's name. In June 1995, Juffer provided a 1986 Honda Civic to his son-in-law Mike for his use in commuting to work from Sioux City, Iowa, to Jefferson, South Dakota. The vehicle was titled in Juffer's name and insured by him, but no permitted driver was ever listed on the policy.

[¶ 7.] In the spring of 1996, Mike blew up the Honda's engine and was without transportation. In March, Mike admitted to Amy that he did not have a valid driver's license because the State of Iowa had revoked his license for alcohol related offenses. Estate produced evidence that Mike was a problem drinker and that this was well known to Amy and a source of friction in their relationship.

[¶ 8.] On July 16, 1996, Mike purchased a 1986 Ford Taurus to replace Juffer's Honda. Juffer told Mike to keep the vehicle since he had three vehicles at the time and did not need it. Mike informed Juffer that he did not have a valid driver's license and could not title or insure the car in his own name. Juffer testified that he then accepted the car but told Mike that he could no longer drive the Taurus or any of Juffer's vehicles. Mike and Amy stated in their depositions that they knew and understood this prohibition.

[¶ 9.] Later in July, Juffer transferred physical custody of the Taurus to Amy. In August, Juffer gave Amy express permission to use the Taurus in Yankton if she needed it, but required her to obtain permission from him before taking the vehicle out of town. Mike did not have a car at this time and was working four miles outside of Yankton. Amy was working in Yankton and needed her car to get to work and take their baby to the day care. In August Juffer also titled and insured the Taurus in his own name. Again, no designated operator was ever listed on the policy.

[¶ 10.] Juffer testified in his deposition that at the time of the transfer he told Mike not to drive the vehicle. Despite this alleged prohibition Mike admitted that he took the vehicle on at least three occasions, including the date of the accident. Amy admitted that she knew Mike had used the vehicle on one occasion prior to the accident. Whether Juffer knew of Mike's use of the Taurus is in dispute.

[¶ 11.] On November 27, 1996, Amy's 1988 Nissan was in the shop for repairs. She and Mike had been invited to his father's home in Sioux City, Iowa, for the Thanksgiving holiday. She called Juffer and obtained permission to take the Taurus to Sioux City for the weekend.

[¶ 12.] On the morning of November 30, 1996, Amy went shopping with her mother-in-law. She left the Taurus in the driveway with the keys in the ignition so that it could be moved to accommodate other cars if necessary. Trobaugh, Mike's friend of several years, stopped by the house with a six-pack of beer and asked for a ride to Jefferson, South Dakota. Mike agreed to take him, and the two left together in the Taurus. Mike admitted that he took the Taurus without getting permission from anyone.

[¶ 13.] Instead of going immediately to Jefferson, Mike and Trobaugh drove around Sioux City and finished the beer. They stopped at the Town House Bar, ate lunch, and continued to drink. At 12:30 p.m., they proceeded to the Derby Bar where they played pool and drank. At 7:30 p.m. Mike and Trobaugh left for Jefferson, taking the back roads.

[¶ 14.] Mike missed a turn on a township road southeast of Jefferson. The Taurus slid off the road, rolled on its top, and landed in a drainage ditch containing two feet of water. Mike was able to get out of the Taurus but Trobaugh died in it as a result of drowning. Seven hours after the accident Mike's blood alcohol content was .155.

[¶ 15.] From the time of its purchase until the date of the accident, the Taurus' odometer revealed that it had been driven approximately 4,635 miles. Juffer had used it seven or eight times and could account for 1,000 miles. Amy's usage accounted for 1,200 miles, leaving 2,435 miles unexplained. Estate produced evidence that Mike was seen driving the Taurus on many occasions during the months of July through November. David Trobaugh, brother of the decedent, stated in his affidavit that on two occasions in the summer of 1996, Mike stopped by to pick up his brother and that Amy was a passenger in the car.

## STANDARD OF REVIEW

[¶ 16.] The standard of review of a trial court's grant of a motion for summary judgment is well settled and was recently reiterated in *Estate of Shuck v. Perkins County*, 1998 SD 32, ¶ 6, 577 N.W.2d 584, 586:

> Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly

show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

[¶ 17.] When reviewing a grant of summary judgment, we are not bound by the trial court's factual findings, but, rather, must undertake an independent review of the record. *Walz v. Fireman's Fund Insurance Co.*, 1996 SD 135, 556 N.W.2d 68.

[¶ 18.] In these consolidated cases, the trial court granted summary judgment in favor of Farmers finding no coverage under the omnibus clause for Mike. Estate sued both Juffer and Amy under the theory of negligent entrustment. The trial court granted summary judgment in the action against Juffer and demurred the action against Amy.

## ANALYSIS AND DECISION

### Appeal # 21032

### The Suit Against Farmers Insurance For Coverage Under the Omnibus Clause.

■ [¶ 19.] At the time of the accident, Juffer carried a liability insurance policy through Farmers on the Taurus. The policy defined an insured person as:

1) You or any family member;

2) Any person using your insured car.

The policy excluded from coverage any person who used the vehicle without having sufficient reason to believe that the use was with the permission of the owner.

[¶ 20.] The omnibus insurance clause in South Dakota is codified at SDCL 32–35–70 and states in pertinent part:

> An owner's policy of liability insurance referred to in § 32–35–68 shall insure the person named therein and any other person as insured, using any insured vehicle or vehicles within the express or implied permission of the named insured, against loss from liability imposed by law for damages arising out of the

ownership, maintenance or use of the vehicle or vehicles within the United States of America.

■ [¶ 21.] The operation of an omnibus clause creates liability insurance in favor of persons other than the named insured to the same degree as the insured. To trigger coverage under this policy, Estate must establish that Mike was operating Juffer's vehicle with either expressed or implied permission. Estate specifically contends that there is a legitimate inference that Mike had permission from Juffer to use the vehicle based upon their close relationship and past conduct.

### Express Permission

■ [¶ 22.] "To constitute express permission, the evidence must be of an affirmative character, directly, and distinctly stated, clear and outspoken, and not merely implied or left to inference." *American Family Ins. Group v. Howe*, 584 F.Supp. 369, 372 (1984)(quoting *Hinton v. Indemnity Insurance Company*, 175 Va. 205, 8 S.E.2d 279, 283 (1940)). In this case, Juffer, Mike and Amy testified that Juffer expressly prohibited Mike from driving any of his vehicles. Estate presented no evidence to the contrary and has failed to establish the existence of express permission. Accordingly, there can be no coverage under the omnibus clause unless Juffer gave implied permission to Mike to use the car.

### Implied Permission

■ [¶ 23.] To establish the existence of implied permission or consent, there must be a "showing of a course of conduct or practice known to the owner and acquiesced in by him that would lead to an application of permission for a particular venture." *Western Casualty & Surety Co. v. Anderson*, 273 N.W.2d 203, 205 (S.D.1979). An owner's failure to object to the use of a vehicle will not in and of itself be deemed consent. *Id.* The evidence must establish that under all of the circumstances a course of conduct or practice existed which Juffer knew or acquiesced in which would lead to the clear inference that Mike had permission to use the vehicle on the evening in question.

Implied permission arises upon consideration of such factors as the past and present conduct of the insured, relationship between the driver and the insured, and usage and practice of the parties over an extended period of time prior to the use in question.

\* \* \*

[T]he usage and practice of the parties must be such that would indicate to a reasonable mind that the driver had the right to assume permission under the particular circumstances.

*Howe*, 584 F.Supp. at 372.

■ [¶ 24.] When examining the nature of the relationship between Juffer and Mike, the Court must give weight to the relationship of the parties and the probabilities which that relationship would normally generate. *See* 12 Couch on Insurance, 2d (rev ed) § 45:352 at 699 (1981). Generally, if the relationship is one of blood or of principal and agent, weaker evidence will support a finding of permissive use. *Elkinton v. California State Auto. Assn., Interstate Ins. Bur.*, 173 Cal. App.2d 338, 343 P.2d 396 (1959).

[¶ 25.] In this case, the relationship between the parties is close, that of father-in-law to son-in-law. The issues involving the past and present conduct of the insured and the usage or practice of the parties over time are closely related. When examining Juffer's past conduct and practice it is clear that he provided Mike with the Honda to drive as his own. Juffer titled and insured the Honda in his own name, but did not list a permitted driver. Mike rendered the Honda inoperable and bought the Taurus as a replacement car for Juffer. The evidence established that Juffer told Mike to keep the car, because he did not need it. When Mike informed Juffer that he did not have a driver's

license and could not title or insure the vehicle in his own name, Juffer took possession of the Taurus, licensed and titled it in his own name, and, following his prior course of conduct, did not list a permitted driver. Juffer stored the Taurus at Mike and Amy's home and informed Mike that he could not drive it. He required Amy to get permission from him before she took it out of town. The circumstances strongly suggest that the usage and practice of the parties remained constant. Juffer provided, licensed and titled the vehicle, and delivered it to Mike's home where he had regular and immediate access to it for his own use. Juffer did not list a permitted driver on the insurance policies for the Honda or Taurus although he always listed Amy and his other children as the drivers of the automobiles he supplied for each of them. Furthermore, after the car was delivered to Mike's residence it was driven 4,635 miles before the accident. Excluding the miles placed on the car by Amy and Juffer there were 2,435 unexplained miles on the car. No one else but Mike had access to the vehicle.

[¶ 26.] Viewing the evidence in the light most favorable to the non-moving party, a fair inference can be drawn that Juffer knew Mike was employed four miles outside of town, that Mike could not license and title the car in his own name, and that he needed a vehicle. Indeed when initially presented with the Taurus, Juffer refused to accept it. Only after Mike told him he could not license and insure the vehicle in his own name did Juffer take possession, title and insure the vehicle, and return it to Mike's residence. Thus, material issues of fact exist as to whether Juffer, in light of his knowledge of Mike and Amy's situation, by his own actions impliedly consented to Mike's use of the vehicle in making it readily accessible for his use. Thus, the trial court's grant of summary judgment is reversed and the case remanded for trial.

[¶ 27.] Estate also claims that coverage is available under the omnibus clause claiming Amy, as permittee, had the authority to permit Mike to use the car. This Court, in *State Farm Mut. Auto. Ins. Co. v. Ragatz*, 1997 SD 123, 571 N.W.2d 155, had occasion to review the scope of a permittee's ability to lend an insured's vehicle to a third party. In *Ragatz*, David McGaugh (McGaugh) had an automobile insurance policy issued by State Farm covering his 1976 Chevrolet pickup. McGaugh gave his adult son, Carl, permission to use the vehicle. For years McGaugh instructed Carl not to allow third parties to use his cars. Carl allowed his roommate, Ragatz, to drive the pickup. Ragatz had an accident, injuring two passengers in the vehicle. The passengers brought suit against Ragatz for injuries sustained as a result of the accident. State Farm filed a declaratory judgment action seeking a determination that Carl's insurer, Farm and City, was responsible for providing coverage for the accident. The trial court granted State Farm's motion for summary judgment and we affirmed, finding that

> If the owner of the car expressly forbids the permittee to lend his car to another, but the permittee nevertheless allows the second permittee to drive the car in violation of the named insured's express orders, the insurer is not liable while the second permittee is driving on the theory that a prohibition against delegation is a restriction upon the use of the vehicle. [Thus, the second permittee] is not an omnibus insured.

*Ragatz*, 1997 SD 123 at ¶ 18, 571 N.W.2d at 158.

[¶ 28.] Estate submitted several affidavits in support of its contention that Amy knew Mike was driving the Taurus. In his affidavit, Brad Kieler alleged that he saw Mike drive the Taurus to work and to visit friends on numerous occasions and that it was common to see Mike drive the Taurus during the relevant time frame. David Trobaugh submitted an affidavit stating that he observed Mike on two more occasions after July 1, 1996 driving the vehicle

when Amy was the passenger. If Amy gave Mike permission to drive the vehicle, this would be a material deviation from the objectives of the initial permission Juffer granted her, that she was allowed to use the car but Mike was not. It would preclude coverage for Mike.

[¶ 29.] In summary, it is undisputed that Juffer never gave express permission to Mike to operate the Taurus at any time, much less on the date of the accident. Additionally, if Amy authorized or acquiesced in Mike's use of the vehicle, this use would be a material deviation from the restrictions placed upon the use of the vehicle by Juffer, which would prohibit coverage under the omnibus clause. Accordingly, the only remaining basis for coverage under the omnibus clause is a finding that Juffer, by his own actions, impliedly consented to Mike's use of the Taurus. Because material issues of fact exist as to this precise question, the summary judgment is reversed and the case is remanded for trial.

## The Suits Against Thomas Juffer and Amy Sylvester for Negligent Entrustment

### Appeal # 21203

### Thomas Juffer

[¶ 30.] This Court has recognized negligent entrustment as a valid cause of action in South Dakota. *Colonial Ins. Co. of Cal. v. Lundquist*, 539 N.W.2d 871, 872 (S.D.1995). "Negligent entrustment is an action to hold the owner of an insured motor vehicle liable for his negligence in acts arising out of the ownership of the vehicle." *Lundquist*, 539 N.W.2d 871 at 876. "An owner of a vehicle may be guilty of negligence if he permits an incompetent, inexperienced and knowingly reckless and accident prone person to drive his vehicle." *Stover v. Critchfield*, 510 N.W.2d 681, 684 (SD 1994) (*citing Robe v. Ager*, 80 S.D. 597, 129 N.W.2d 47, 51 (S.D.1964); *see also Arbach v. Gruba*, 89 S.D. 322, 232 N.W.2d 842, 846 (S.D. 1975)). This doctrine applies to situations where an owner negligently permits another to drive his vehicle. Permission, either express or implied, is a prerequisite to a suit for negligent entrustment.

[¶ 31.] From our analysis of the omnibus clause claim, we have determined that there is no evidence that Juffer gave Mike express permission to drive the vehicle. However, there is a material question of fact as to whether Juffer gave implied permission to Mike to drive the vehicle. If a jury determines that implied permission existed, then the other requirements of negligent entrustment can be addressed. Accordingly, the trial court's grant of summary judgment in favor of Juffer is reversed.

### Appeal # 21355

### Amy Sylvester

[¶ 32.] In the suit against Amy, Estate asserted that Amy negligently entrusted the Taurus to Mike. Estate argued that Amy had actual control over the Taurus via Juffer's express consent.

[¶ 33.] South Dakota case law does not address the precise issue of who may be sued for a claim of negligent entrustment. *See, Robe*, 80 S.D. 597, 129 N.W.2d 47; *Western Casualty*, 273 N.W.2d 203; *Great Central Ins. Co. v. Roemmich*, 291 N.W.2d 772 (S.D.1980); *Lundquist*, 539 N.W.2d 871. Other courts considering this question have looked to the Restatement (Second) of Torts § 308 (1965) for guidance. That section provides:

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Comment (a) to § 308 interprets the phrase under the control of the actor:

The words "under the control of the actor" are used to indicate that the third person is entitled to possess or use the

thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding the consent he can prevent the third person from using the thing or engaging in the activity.

*See also, Mills v. Crone*, 63 Ark.App. 45, 973 S.W.2d 828 (1998); *Vilas v. Steavenson*, 242 Neb. 801, 496 N.W.2d 543 (1993); Neary v. McDonald, 956 P.2d 1205 (Alaska 1998); *Zedella v. Gibson*, 165 Ill.2d 181, 209 Ill.Dec. 27, 650 N.E.2d 1000 (Ill 1995).

[¶ 34.] Courts interpreting this language are split over the importance of actual ownership in a negligent entrustment case. The Nebraska Supreme Court determined that a son who allowed a friend to drive his father's vehicle could not be sued for negligent entrustment since he was not the owner of the vehicle. *Vilas v. Steavenson*, 496 N.W.2d at 550. However, the Restatement language regarding "under the control of the actor" has also been interpreted as not necessarily requiring "ownership" per se, but instead requiring proof that the "defendant had sufficient control of the vehicle, and negligently supplied it to an incompetent third party;" that in essence "the defendant must have a greater right of possession or control than the 'entrustee.'" *Neary v. McDonald*, 956 P.2d at 1209; *see also, Mills v. Crone*, 973 S.W.2d at 831 ("one is not liable for negligent entrustment of a thing if he has no right to control it."). "The defendant must have the power to permit or prohibit the third party from using the vehicle." *Neary v. McDonald*, 956 P.2d at 1209 (citing *Neale v. Wright*, 322 Md. 8, 585 A.2d 196, 201 (1991)). The *Neale* court explained this power:

> [I]n order for [defendant] to ... be liable under a negligent entrustment theory, [defendant] had to have the power to permit or prohibit [entrustee] from using the vehicle. That power could emanate from a superior right to control the operation of the car, or from a special relationship between the "entrustor" and the driver, such as a parent-child relationship.

*Neale*, 585 A.2d at 201.

[¶ 35.] In the present case, Amy was given permission to operate the Taurus that was owned, licensed and insured by her father. Amy was allowed to use the vehicle, which was stored at her residence, providing her immediate access and physical possession of the car. Although Amy was not the legal owner of the Taurus, and there were some restrictions placed on her use of it, she was given permission to use the vehicle basically as if it was her own. It is reasonable to conclude that she had sufficient control of the vehicle to entrust it to another.

[¶ 36.] Because Amy had the ability to entrust the vehicle, it must be determined whether Amy gave Mike permission to use the car and if she was aware of his problems with drinking and driving. Amy admitted in her deposition that she knew Mike had used the car on at least one occasion prior to the accident. Estate submitted an affidavit that Mike was observed driving the car with Amy as the passenger on two occasions. Additionally, Amy left the keys in the car the day of the accident. A jury could infer from this action that Amy was giving Mike permission to use the car.

[¶ 37.] Regarding Amy's knowledge of Mike's proclivity for drinking and driving, Estate submitted affidavits establishing that Mike was a problem drinker and that he was prone to drink and drive. Additionally, Amy admitted that Mike told her he did not have a valid driver's license because the State of Iowa had revoked it for alcohol related offenses. There exists a genuine issue of material fact as to Amy's knowledge that Mike would become intoxicated and drive the vehicle in a manner creating an unreasonable risk of harm to others. Accordingly, the summary judgment is reversed.

CONCLUSION

[¶ 38.] For the previously stated reasons, we reverse the trial court's grant of summary judgment in # 21032 Estate of Trobaugh v. Farmers Insurance Exchange; # 21203 Estate of Trobaugh v. Michael Thomas Sylvester, Thomas H. Juffer, and Jefferson Township; and # 21355 Estate of Trobaugh v. Amy Sylvester. These cases are remanded for jury trial.

[¶ 39.] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 40.] AMUNDSON, Justice, dissents.

[¶ 41.] KERN, Circuit Judge, for SABERS, Justice, disqualified.

AMUNDSON, Justice (dissenting).

[¶ 42.] I agree with the majority's analysis concluding there was a lack of express permission by Juffer as to prohibit coverage under the omnibus clause. I disagree, however, with the majority's conclusion that there is a genuine issue of material fact as to implied permission. Hence, there should also be a dismissal of the negligent entrustment claims. As such, the trial court should be affirmed on all grounds.

**Implied Permission**

[¶ 43.] Certain facts are undisputed. In the present case Amy was given conditional permission to operate the Taurus, which was owned, licensed and insured by her father, Juffer. It is also clear from the record that Juffer placed an express restriction on the use of the car telling Amy that her husband, Mike, could not drive it. In his deposition, Mike admitted that he knew that he was not to operate the Taurus and that he had no permission, express or implied, to use the vehicle. Mike understood that only Amy was authorized to drive the vehicle. Mike admitted that he had violated Juffer's restrictions by taking the Taurus the day of the accident. Simply put, there are absolutely no facts in the record to support a finding of implied permission. In fact, these undisputed facts support Juffer's express forbiddance of Mike from driving the Taurus.

[¶ 44.] To establish the existence of implied permission or consent, there must be a showing of "a course of conduct or practice *known to the owner* and acquiesced in by him that would lead to an application of permission of a particular venture." *Western Casualty & Surety Co. v. Anderson*, 273 N.W.2d 203, 205 (S.D.1979). The majority, however, relies on speculative, hypothetical reasons for finding a dispute of fact as to implied permission. The majority relies on facts that the vehicle was being stored in Amy's garage; that Mike's work is four miles outside of town; and that the Taurus' odometer does not coincide with Juffer's and Amy's driving patterns to conclude it is "disputed" whether Juffer gave Mike implied permission to drive the Taurus.[1] Those facts cited by the majority and the inferences drawn therefrom do not form a basis for implied permission. The majority concedes that there is absolutely no evidence that Juffer

1. As unpersuasive as these facts are and do not create implied permission, I address them individually. First, the Taurus was at Amy's residence because she had limited permission to drive it. Mike's access to the vehicle was not a fact contemplated by Juffer, and Trobaugh has not shown otherwise. Second, Mike's job being four miles out of town is also a non-issue. Although not a popular way to get to work in South Dakota, Mike could have easily carpooled to work or used alternative transit. The use of the Taurus was not the only mode of transportation available to him. Third, the unaccounted for mileage does not, *inter alia,* rise to the level of a disputed fact whether Mike had driven the vehicle. The restrictions and limitations fashioned by Juffer in the use of his vehicle by Amy does not in any way dilute his unwavering prohibition of Mike being able to use the Taurus. "Providing the opportunity for [Mike] to take the [Taurus] without any physical impediments does not constitute consent for [Mike] to use the vehicle for his own personal ventures." *American Family Ins. Group v. Howe,* 584 F.Supp. 369, 377 (D.S.D.1984) (citing *Dickinson v. Great American Indemnity Co.,* 296 Mass. 368, 6 N.E.2d 439 (1937)).

actually knew Mike drove the Taurus. "The permission contemplated by an omnibus clause is something more than mere sufferance or tolerance without taking steps to prevent." 46 CJS Insurance § 1049. It logically follows that there is no evidence that Juffer acquiesced to Mike's prohibited driving of the Taurus because Juffer lacked knowledge of Mike's unpermitted driving.

[¶ 45.] The burden of proof is upon the Trobaughs to show that Mike's use at the time of the accident was with the permission of Juffer since Mike "is a stranger to the policy and not the named insured." *Howe*, 584 F.Supp. at 372 (D.S.D.1984) (citing *Western, supra* at 205). I submit that the express prohibition by Juffer cannot be overcome by the speculative inferences drawn by the majority as such "course of conduct or practice" was not "known" to Juffer at the time of the accident. "[T]here must be some connection between the named insured's conduct and the operation of the car by the third person, the critical question being whether the named insured said or did something that warranted the belief that the ensuing use was with his consent." 46 CJS Insurance § 1052. As the evidence is contrary to Trobaugh's position, he has failed to meet his burden.

[¶ 46.] It appears the majority confuses implied permission or authority with ratified permission or authority.[2] Ratified permission or authority may overcome an express prohibition. *See Bank of Hoven v. Rausch*, 382 N.W.2d 39 (S.D.1986). Implied permission, however, is analyzed only if there is an absence of whether the owner, or named insured, has either allowed or denied express permission to another. In other words, if the insured has expressly allowed or denied a third party permission to drive the insured's vehicle, then implied

permission is not analyzed. This is because the insured has spoken, and his or her permission or non-permission cannot be overcome by the actions of the third party. "It is incongruous to first recognize that the named insured has expressly forbidden the original permittee to extend permission to another, and then proceed to hold he has given implied consent under these circumstances." *Tristan v. Government Employees Ins. Co.*, 489 S.W.2d 365, 367 (Tex.Civ.App. 1973). Implied permission cannot overcome express non-permission. Being that implied permission does not apply to this case, we should affirm the trial court on this issue.

[¶ 47.] It is undisputed that Juffer gave neither express nor implied permission to Mike to operate the Taurus at any time, much less on the date of the accident. To the contrary, Juffer expressly forbade Mike from driving the Taurus. Additionally, there is no evidence in the record to suggest that Juffer ever acquiesced or consented to Mike's use of the vehicle prior to the accident. Accordingly, the trial court's grant of summary judgment in favor of Farmers Insurance should be affirmed.

### Negligent Entrustment

[¶ 48.] The issue of negligent entrustment is moot as such a cause of action is predicated on permission from the owner. The "owner of a vehicle 'may be guilty of negligence if he *permits* an incompetent, inexperienced and knowingly reckless and accident prone person to drive' his vehicle." *Stover v. Critchfield*, 510 N.W.2d 681, 684 (citing *Robe v. Ager*, 80 S.D. 597, 129 N.W.2d 47, 51 (S.D.1964); *see also Arbach v. Gruba*, 89 S.D. 322, 232 N.W.2d 842, 846 (S.D.1975)) (emphasis supplied). As discussed above, Juffer expressly forbade Mike from driving the Taurus. Without the requisite permission, Tro-

---

**2.** Ratification by a named insured of a third party's use after the fact creates no omnibus coverage. *Pettis v. State Farm Mut. Ins. Co.*, 286 Ala. 344, 239 So.2d 772 (1970). "The permission must be given before the accident for coverage to apply; subsequent notification of the use is insufficient to invoke coverage." 8 Couch on Insurance 3d § 112:5. Thus, we are left with Juffer's express prohibition versus this Court's hypothetically driven idea of implied permission.

baugh cannot make out a claim based on negligent entrustment.

[¶ 49.] Even assuming that there is some lingering question as to issue of implied permission, the negligent entrustment issue in this case is clearly answered by our holding in *State Farm Mut. Auto. Ins. Co. v. Ragatz*, 1997 SD 123, 571 N.W.2d 155. In *Ragatz*, this Court made clear that

> If an owner of the car expressly forbids the permittee to lend his car to another, but the permittee nevertheless allows the second permittee to drive the car in violation of the named insured's express orders, the insurer is not liable while the second permittee is driving on the theory that a prohibition against delegation is a restriction upon the use of the vehicle. [Thus, the second permittee] is not an omnibus insured.

*Ragatz*, 1997 SD 123 at ¶ 18, 571 N.W.2d at 158. Under *Ragatz*, what more could Juffer do to show he denied Mike permission to use the vehicle? He expressly forbade Mike from driving the Taurus. He placed restrictions on Amy's permission to drive the vehicle. He also instructed Amy to not allow Mike to drive the vehicle. Our holding in *Ragatz* makes it clear that Juffer cannot be held liable under a theory of negligent entrustment.